Mabel Ulrich, Executor of the Estate of J. Robert Ulrich, Deceased, Plaintiff, v. Nicholas Glyptis and Irene N. Glyptis, Defendants.

Gen. No. 66–46.

Second District.

February 21, 1967.

Rehearing denied April 13, 1967.

Desort and Krantz, of Chicago, for appellants.

Arthur S. Walter and Simon Herr, both of Chicago, for appellee.

MR. JUSTICE SEIDENFELD delivered the opinion of the court.

Plaintiff, as executor of the estate of her late husband, brought suit against defendants Nicholas Glyptis and Irene N. Glyptis on an alleged note in the face amount of $25,000, and secured judgment on complaint and answer, by default. This dispute relates to the dismissal of defendants' second petition to vacate the default judgment by proceedings brought under section 72 of the Civil Practice Act. (Ill Rev Stats 1965, c 110, § 72.)

The instrument upon which the suit is based is written on stationery bearing the letterhead of "MULTI-TRON LABORATORY, INCORPORATED," as follows:

"March 11, 1961

"Received of Dr. J. Robert Ulrich and Mabel A. Ulrich of Arboretum Road, Glen Ellyn, Illinois, the sum of $25,000 (Twenty-five Thousand Dollars) as a loan for the period of one year as of this date, March 11, 1961 which may be returned within a lesser time if the borrower so desires upon the following basis:

"The sales for the period of January, February, March of 1961 will be compared to the three month

period previous to its return or if the full year is used, the period January, February, March 1962 as a basis to establish a ratio of gross sales of Multi-Tron Laboratory, Incorporated that the ratio will be used on the original amount and will be returned for example, if the sales for the quarter ending March 31, 1961 amount to $100,000/and the sales for the same period in 1962 amount to $200,000. the principal will be doubled, likewise if the sales amount to only $150,000. in the quarter ending March 31, 1962, the principal will be returned at $25,000. plus an amount equal to 50% of the principal. In the event there is no increase in sales, a nominal interest of at least 4% will be paid.

/s/ Nicholas Glyptis
Nicholas Glyptis

/s/ Irene N. Glyptis
Irene N. Glyptis"

The complaint alleged the instrument to be a note, and further alleged both a demand for and a failure of payment. The defendants' answer denied all of the allegations of the complaint, and further alleged that the loan in question was made "not to the defendants but to Multi-Tron Laboratory, a corporation."

Trial on the complaint and answer was had on December 14, 1964, without the defendants being present either in person or by counsel. Judgment was thereupon entered in favor of the plaintiff and against the defendants, individually, in the total amount of $29,687, pursuant to a judgment order filed on December 30, 1964.

On July 14, 1965, after citation hearings were continued from time to time, the defendants filed a verified petition under section 72 of the Illinois Civil Practice Act to vacate the judgment against them. This petition, which was filed by a new attorney for defendants, simply

set forth, in essence, that the complaint was unverified, that an appearance and answer was filed on behalf of defendants, that the defendants were in a confused and upset mental condition because of financial difficulties and because of the deaths of certain family members of one of the defendants, that the defendants were not in contact with their attorneys until after the judgment was entered, that the report of proceedings neither mentions the names of the defendants nor the method by which the case came on for hearing and does not contain any testimony of the plaintiff, that the instrument sued upon was on the stationery of a bankrupt corporation and was not notarized or witnessed, and that the foregoing facts, if known at the time of the judgment order, would have prevented the entry of same. The petition was denied on November 23, 1965.

On December 14, 1965, after another substitution of attorneys for defendants, a second petition was filed to vacate the judgment pursuant to section 72 of the Illinois Civil Practice Act. Exhibit "B" to this second petition is as follows:

"September 11, 1962

## ACCEPTANCE

We, the undersigned, being an unsecured creditor of MULTI-TRON LABORATORIES, INC. or RAY-TRONICS SALES COMPANY, INC., do hereby approve the recommendation of the CREDITORS' COMMITTEE, as expressed in their letter to creditors of September 11, 1962, and do hereby consent to accept in full payment, settlement and release of our claim against the above named MULTI-TRON LABORATORIES, INC., or RAY-TRONICS SALES COMPANY, INC. a compromise settlement of 30%,

payable 7½% cash and 22½% divided in three equal yearly installments, evidenced by non-interest bearing Note from the above company.

In the event our claim is under $100.00, or in the event we wish to reduce our claim to $100.00, it is understood that we will receive 30% in cash in full settlement and compromise.

/s/ J. Robert Ulrich

CREDITOR OF ~~MULTI-TRON LABORATORIES, INC.~~*

~~RAY-TRONICS SALES COMPANY, INC.~~*
~~(Strike one if inapplicable)~~ *
N & I Realty Co

ADDRESS: 523 So. Cicero Ave.

Chicago 44, Ill.

AMOUNT OF CLAIM $25,000.00"

* Inked interlineations on original.

The petition to vacate the judgment alleged that the foregoing document constitutes a meritorious defense in that it shows that the obligation sued upon is actually the obligation of Multi-Tron Laboratories, Inc., a corporation, and not the personal obligation of the defendants.

Further, the petition contains the affidavits of two of defendants' attorneys which purport to show that the "Acceptance" was unavailable, despite the diligence of the defendants and their attorneys, until just prior to the filing of the petition. The affidavit of Attorney Berndtson, defendants' first attorney, essentially represents that the document sued upon, in his opinion, constituted a personal obligation of the defendants. After defendants had informed him of the existence of the "Acceptance," however, he repeatedly "bore pressure" upon them to locate that document, and he himself examined the court files involving the bankruptcy proceed-

ings of Multi-Tron Laboratories, Inc., and telephoned the receiver in bankruptcy, the receiver's attorney, and one other attorney, but the "Acceptance" remained undiscovered.

The affidavit of Attorney Elliott, defendants' then attorney, represents that he did not discover the "Acceptance" until December 2, 1965, and that he offered a copy thereof on December 7, 1965 to the plaintiffs' attorney who refused to accept it.

From a denial of this second petition, defendants appeal.

The foregoing affidavits are significant by their omissions. Nowhere do the affidavits reveal the whereabouts of the mysterious "Acceptance" during the time of the trial or thereafter until its discovery one year later. It seems clear that Attorney Elliott knew at the time of his affidavit where the document had been, since he states therein that he found it. The failure to go further and state where the document had been is curious, and it can only be assumed that had affiant's story been completely told, the facts would negate a finding of diligence on behalf of the defendants or their representatives. Indeed, the affidavit of Attorney Berndtson discloses that he and defendants *knew* at the time of the trial and prior thereto that the document existed. Also conspicuous by its absence is a sworn statement by defendants showing that they themselves diligently searched for the document, particularly since Attorney Berndtson "bore pressure" upon them and "urged them to locate a copy" of it during "many telephone interviews and personal conferences" with defendants. Finally, there is no showing as to why no discovery procedures were pursued in an effort to locate the "Acceptance."

 The requirements for relief under section 72 were clearly stated in Powers v. Browning, 2 Ill App2d 479, 119 NE2d 795, pp 486 and 489 (1954):

453

". . . The defendant was required to show affirmatively that there was no lack of diligence on his part in preparing his case for trial, and that he was in no manner negligent in his efforts to procure the newly discovered evidence at the trial. Nesbit v. Streck, 259 Ill App 48. As the court said in People v. Dabney, 315 Ill 320: 'Applications for new trial on the ground of newly discovered evidence are not looked upon with favor by courts but such applications are to be subjected to close scrutiny. The burden is on the applicant to rebut the presumption that the verdict is correct and to show that there has been no lack of due diligence. (People v. Le Morte, 289 Ill 11.) The evidence must fulfill the following requirements: First, it must appear to be of such conclusive character that it will probably change the result if a new trial is granted; second, it must have been discovered since the trial; third, it must be such as could not have been discovered before the trial by the exercise of due diligence; fourth, it must be material to the issue; and fifth, it must not be merely cumulative to the evidence offered on the trial (citing cases).' Stocker v. Scherer, 1 Ill2d 406."

This court has recently stated in Gundersen v. Rainbow Cleaners and Laundry, Inc., 77 Ill App2d 268, 222 NE2d 41 (1966) that a motion under section 72 is not intended to relieve a party from the consequences of his own mistake or negligence, and that petitioner has the burden of alleging and proving that adequate grounds for relief exist. The court is not restricted to facts preceding the default judgment but may consider conduct of a party after the judgment is entered. Park Ave. Lumber & Supply Co. v. Nils A. Hofverberg, Inc., 76 Ill App2d 334, 222 NE2d 49 (1966).

In view of defendants' knowledge of the existence of the "Acceptance" at the time of trial, as well as at the

time of the hearing on the original motion to vacate the judgment, the case is not unlike that of Bradshaw v. Saporito, 14 Ill App2d 502, 144 NE2d 838 (Abst 1957), where the defendant petitioned under section 72 to vacate a judgment to enable him to introduce the testimony of a certain witness. The petition was denied and the Appellate Court affirmed, saying:

> "At the time of the hearing on the motion for a summary judgment the defendant knew of the witness and of her knowledge of the case about which she could testify. The record does not indicate that the defendant sought a postponement of the hearing of the motion for a summary judgment in order to search for and procure the presence of the witness . . . It is interesting to note that no affidavit by the witness, setting out what her testimony would be, was presented to the court. We are of the opinion that the court was right in denying plaintiff's petition."

■ We hold that the defendants' petition and affidavits are not persuasive to show that there was due diligence in attempting to discover the "Acceptance" at or prior to the time of trial, as well as prior to the time the original petition to vacate was heard. As noted above, the affidavits reveal: that the existence of the "Acceptance" was known all along, but they do not indicate why discovery procedures were not undertaken to find it; that defendants were repeatedly urged to search for it, but not if defendants did search; that it was found on December 2, 1965, but not *where* it was found or where it had been all along.

■ Quite apart from the failure to show diligence on behalf of defendants, it is the opinion of the court that the "Acceptance" is insufficient to show a meritorious defense. As already noted from the quoted language of Powers v. Browning, supra, p 486, the newly discovered

455

evidence "must appear to be of such conclusive character that it will probably change the result if a new trial is granted." The conclusion of petitioner that he would be able to show a meritorious defense on the basis of the "Acceptance" if permitted to do so at a retrial is not an adequate basis for the relief sought. Gundersen v. Rainbow Cleaners and Laundry, Inc., supra, p 43.

██ The "Acceptance" does not conclusively show that the defendants are not personally obligated on the instrument sued upon. Even if the "Acceptance" reflected a corporate debt, we would not necessarily conclude that there could not at the same time be a personal debt under an instrument executed eighteen months earlier. Furthermore, the conclusiveness of the "Acceptance" is clouded by the inked interlineations drawn through the corporate names beneath the signature of the creditor, which certainly raises the question that the creditor might not have considered himself a corporate creditor at all. Defendants have cited no authorities, and we know of none, indicating that the "Acceptance," if originally introduced at the trial, would have constituted a meritorious defense or materially have changed the outcome of the litigation. The note sued upon is not, on its face, ambiguous insofar as it purports to create a personal obligation. At best, therefore, the "Acceptance" would be extrinsic evidence of a latent ambiguity. M & J Diesel Locomotive Filter Corp. v. Nettleton, 56 Ill App2d 146, 150, 151, 205 NE2d 659 (1965). Nothing further was presented to show the circumstances under which this document was submitted which in any way could have amounted to a practical construction of the agreement of the parties. In itself the document is not conclusive and would not "probably change the result if a new trial is granted."

██ Because of the failure to show that there was no lack of diligence by defendant, and because the newly discovered evidence is certainly not conclusive on the

456

question of the defendants' personal liability, we hold that the presumption in favor of the decree (Neitzke v. Neitzke, 15 Ill App2d 473, 477, 146 NE2d 708 (1958)) has not been overcome. Accordingly, the order denying the second petition is affirmed.

Order affirmed.

DAVIS and ABRAHAMSON, JJ., concur.