EDWARD MALEK III, a Minor by his Mother and Next Friend, Sherry Malek, Plaintiff and Petitioner-Appellee, v. LEDERLE LABORATORIES, a Division of American Cyanamid, Defendant and Respondent-Appellant.

First District (1st Division) No. 85—3447

Opinion filed February 9, 1987.

Baker & McKenzie, of Chicago (Francis D. Morrissey, Thomas F. Bridgman, Miles J. Seyk, and John C. Filosa, of counsel), for appellant.

McDowell & Colantoni, Ltd., of Chicago (Anthony M. Colantoni, of counsel), for appellee.

PRESIDING JUSTICE QUINLAN delivered the opinion of the court:

Plaintiff, Sherry Malek, as mother and next friend of the minor plaintiff, Edward Malek III, brought a personal injury action to recover damages against several defendants, including Lederle Laboratories (Lederle). In December 1982, the case proceeded to trial against Lederle only, and at the conclusion of the trial, the jury found in favor of defendant and against plaintiff on all counts. Judgment was subsequently entered on that verdict. Thereafter, plaintiff filed a petition pursuant to section 2—1401 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—1401) requesting that the judgment be va-

cated and a new trial ordered. Following a hearing, the trial court granted plaintiff's petition. Defendant's motion for reconsideration was subsequently denied, and the defendant now appeals.

We reverse.

The facts pertinent to this appeal are as follows. The plaintiff filed a two-count complaint directed against defendant Lederle which included a count for strict products liability and a count for negligence. The complaint alleged that the minor plaintiff had been given vaccinations of diphtheria tetanus pertussis (DTP) manufactured and marketed by Lederle under the brand name Tri-Immunol. The complaint further alleged that the Tri-Immunol vaccine manufactured by Lederle was unreasonably dangerous in that it was not accompanied by adequate warnings and that Lederle was negligent in failing to properly test the vaccine. Following the entry of the jury's verdict in favor of defendant, plaintiff's post-trial motion was denied, and, thereafter, the verdict was affirmed on appeal. (*Malek v. Lederle Laboratories* (1984), 125 Ill. App. 3d 870, 466 N.E.2d 1038.) However, prior to this court's affirmance of the trial court's judgment, plaintiff had filed a section 2—1401 petition (Ill. Rev. Stat. 1983, ch. 110, par. 2—1401), asserting as the basis for her petition that there was newly discovered evidence.

In her petition under section 2—1401, plaintiff alleged that evidence had been withheld by the defendant which would have caused a different result at the trial of this case. In particular, the plaintiff set forth the following basis for her contentions. On March 31, 1981, during the course of discovery, plaintiff's attorney filed the following request for production:

"(f) Any and all correspondence, pamphlets, brochures, advertisements, promotional materials, displays, doctor's letters, newsletters, reports, articles, labels and inserts containing the drug DTP and/or Pertussis."

Plaintiff asserted that in response to this request, defendant made certain documents available for inspection at its headquarters at Pearl River, New York, on October 22 and 23, 1981, and that one of plaintiff's attorneys, Boyd McDowell, visited defendant's headquarters and inspected all documents for reproduction and delivery to the office of plaintiff's attorneys. Attached to plaintiff's complaint was Boyd McDowell's affidavit, which contended that certain documents that fell within the purview of the above request were withheld by the defendant.

Plaintiff further alleged in her petition that on March 26, 1982, by letter to counsel for defendant Lederle, plaintiff requested that Lederle produce:

"Any and all reported pertussis vaccine reaction claims, including but not limited to convulsions, seizures, shock and paralysis, in the possession of Dr. Szumski, as indicated in his deposition, or in the possession of the Professional Services Department."

Plaintiff said that in response to this request, defendant did produce 31 product complaints, but only 14 of those complaints had been received by defendant prior to December 5, 1978, the date on which plaintiff was vaccinated with Tri-Immunol. In support of this allegation, plaintiff attached the affidavit of Allen McDowell, another of plaintiff's attorneys.

Plaintiff also contended in her petition that the defendant had "fraudulently" failed to disclose and produce all the documents that fell within the purview of the above discovery requests. Plaintiff later amended her petition to specifically contend that defendant "fraudulently, wrongfully, and/or mistakenly failed to fully disclose and produce all the documents." In support of these allegations of fraud, plaintiff alleged that in the case of Yankovich v. Lederle Laboratories, which was then pending in the circuit court of Cook County, plaintiff's attorneys there (plaintiff's attorneys in the instant case also served as plaintiff's attorneys in Yankovich), filed a request for production substantially identical to the request for production filed in the *Malek* case. However, the plaintiff contended that during an inspection of documents at defendant's New York headquarters, which was similar to the inspection that took place in the *Malek* case, defendant Lederle produced over 60 additional complaints of severe reactions to Tri-Immunol, as well as additional correspondence which had not been produced by Lederle in the *Malek* case. Plaintiff claimed that these additional documents disclosed in the Yankovich case fell within the scope of the request for production filed in the *Malek* case. The additional complaints and correspondence produced in Yankovich were attached to plaintiff's petition as exhibits 1 through 71. Also, the plaintiff specifically asserted that the failure to discover these documents was not due to any negligence or lack of diligence on her part or on the part of her attorneys and that had these documents been produced in the *Malek* case and had the documents been determined to be admissible and received into evidence, the jury would have necessarily reached a verdict for plaintiff.

Additionally, the plaintiff also filed her section 2—1401 petition with this court during her original appeal from the judgment entered against her and requested an order staying the judgment of the trial court. This court denied plaintiff's request for a stay, and, as stated previously, subsequently affirmed the trial court's judgment. *Malek v.*

*Lederle Laboratories* (1984), 125 Ill. App. 3d 870, 466 N.E.2d 1038.

Following the affirmance by this court, defendant Lederle filed a response to plaintiff's petition and amended petition in the trial court which essentially denied the allegations of both. On July 16, 1985, the trial court granted plaintiff's petition, vacated the original verdict in favor of defendant, and ordered a new trial. As stated earlier, Lederle then filed a motion for rehearing which was denied on October 25, 1985, and on November 21, 1985, Lederle filed its notice of appeal.

■■ ■ Section 2—1401 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—1401) provides a procedure whereby final orders and decrees may be vacated after 30 days. To prevail on a section 2—1401 petition, a plaintiff must prove first that if the grounds for relief had been known at trial, it would have prevented the entry of judgment against the petitioner, and second, that the failure to discover and present the ground for relief was not the result of the petitioner's own lack of diligence. (*Lubbers v. Norfolk & Western Ry. Co.* (1984), 105 Ill. 2d 201, 210, 473 N.E.2d 955.) Consistent with the strong judicial policy favoring the finality and stability of judgments, courts have long held that a section 2—1401 petition is not to be used as a device to relitigate issues already decided or to put in issue matters which have previously been or could have been adjudicated. (*Union National Bank & Trust Co. v. Green* (1979), 80 Ill. App. 3d 32, 34-35, 399 N.E.2d 313.) A section 2—1401 petition was not intended as a procedure whereby a litigant may be relieved of the consequences of his own mistake or negligence, and the burden is on the petitioner to rebut the presumption that the verdict is correct and to demonstrate that there has been no lack of due diligence. (*Ulrich v. Glyptis* (1967), 79 Ill. App. 2d 447, 454, 224 N.E.2d 581.) While section 2—1401 has been developed to provide trial courts with the equitable powers necessary to grant relief and prevent injustice, it was never intended to give a party a new opportunity to do that which should have been done at an earlier proceeding. *Petrauskas v. Motejunas* (1971), 133 Ill. App. 2d 293, 296, 272 N.E.2d 805.

Defendant Lederle, in its brief, submits that there exists a third requirement that a litigant seeking relief under section 2—1401 must prove. Specifically, it contends that the petitioner must affirmatively prove that the party against whom the relief is sought fraudulently or intentionally withheld documents or evidence. In support of its contention, the defendant has cited the cases of *Lubbers v. Norfolk & Western Ry. Co.* (1984), 105 Ill. 2d 201, 473 N.E.2d 955, as well as *Ostendorf v. International Harvester Co.* (1982), 89 Ill. 2d 273, 433 N.E.2d 253.

However, the defendant has misinterpreted the holdings in those

cases. The issue concerning whether the party against whom relief is sought fraudulently or intentionally withheld documents is not a separate and distinct requirement, but, rather, it is an element necessarily subsumed into the determination of whether the petitioner has exercised due diligence in discovering and presenting the ground for relief. See *Lubbers v. Norfolk & Western Ry. Co.* (1983), 118 Ill. App. 3d 705, 454 N.E.2d 1186, *aff'd* (1985), 105 Ill. 2d 201, 473 N.E.2d 955.

To adequately consider the merits of plaintiff's section 2—1401 petition here, it is necessary to review the history of the discovery in this case. Prior to trial, on or about May 21, 1981, plaintiff served defendant Lederle with a "request for production of documents," which included paragraph (f), the substance of which was set forth earlier in this opinion. On August 3, 1981, in a supplemental response to plaintiff's "request for production of documents," defendant Lederle advised plaintiff that it objected to providing any records prior to 1977 since its product, Tri-Immunol, only had an 18-month shelf life, thus making any data prior to 1977, defendant contended, irrelevant to plaintiff's case.

On August 27, 1981, the trial judge who had been supervising the discovery in this case entered an order concerning some of defendant Lederle's objections to plaintiff's interrogatories and directed the production of certain documents and files for plaintiff's inspection at defendant's Pearl River, New York, facility. While the exact details of the order are unclear, it does appear from the record that the trial court failed to consider plaintiff's request in paragraph (f) or defendant's objections to it. On September 28, 1981, defendant wrote to plaintiff to advise her that the documents ordered produced by the trial judge would be available at Lederle's Pearl River, New York, facility on October 22 and 23, 1981. In its letter, however, defendant made it clear that this inspection would only be permitted according to the terms that defendant had set forth in its supplemental response to plaintiff's request (f), on August 3, 1981. Plaintiff did not respond to the letter, nor did she challenge defendant's statements concerning plaintiff's request (f).

On October 27, 1981, following the inspection of the documents at defendant's New York facility, counsel for Lederle again wrote to all counsel of record, including plaintiff's counsel, and set out in detail the documents that had been requested by the parties as a result of the inspection. This letter also made it quite clear that it was defendant's position that it would only produce complaints and correspondence relating to neurological symptoms for the years 1977 and 1978. The defendant further indicated in the letter that the documents it had pro-

duced were, thus, in full compliance with the plaintiff's discovery requests, as modified by its August 3, 1981, supplemental response. Again, the plaintiff failed to indicate any objections to the defendant's assertions or its productions.

■ We find, based on this record, that the plaintiff has failed to meet her burden of establishing that she is entitled to relief pursuant to section 2—1401. Clearly the plaintiff was guilty of a lack of due diligence by failing to object to defendant's modification of plaintiff's request (f), which the defendant restated on several occasions, and also by failing to object to the documents produced by the defendant. The plaintiff could have refused defendant's limited production offer and requested the trial court to order the defendant to comply with its original production request. However, for whatever reason, the plaintiff failed to do so and instead accepted the defendant's limited production and proceeded to trial. Furthermore, the plaintiff can hardly contend that she was unaware of defendant's position or was deceived by the defendant since the defendant had filed a written objection to the plaintiff's production request and, as noted above, restated this position in writing on several occasions.

Therefore, the evidence contained in exhibits 1 through 71 was not newly discovered within the meaning of the statute, since, if plaintiff had acted with due diligence she could have discovered the evidence and, if relevant and admissible, used it at the trial. As stated earlier, section 2—1401 was not intended to give a party a second opportunity to do that which should have been done at prior proceedings. See *Petrauskas v. Motejunas* (1971), 133 Ill. App. 2d 293, 272 N.E.2d 805.

We also believe the cases cited by the plaintiff are distinguishable from the present situation. In fact, these cases support the defendant's position and actually warrant a result contrary to the decision of the trial court.

In *Ostendorf*, the court there noted:

"[A] litigant exercises ordinary diligence in pretrial discovery when he poses interrogatories reasonably calculated to elicit the information important to his case. If his opponent then *suppresses information* within the scope of the interrogatories *in such a way as to prevent the inquirer from realizing what has occurred*, the *failure to discover the information* is the *result of the former's fault*, not *the latter's negligence*." (Emphasis added.) *Ostendorf v. International Harvester Co.* (1982), 89 Ill. 2d 273, 284-85, 433 N.E.2d 253.

While the supreme court in *Ostendorf* did grant the plaintiffs' petition, the court specifically found there that the defendant knowingly

gave false answers to interrogatories and intentionally withheld, without filing an objection to plaintiffs' production request, test reports and other information demanded by the interrogatories. Such action, under the circumstances, the court concluded, inevitably tended to mislead opposing counsel into the belief that further inquiry was not needed and that he had received all that was available.

Similarly, in *Lubbers v. Norfolk & Western Ry. Co.* (1984), 105 Ill. 2d 201, 473 N.E.2d 955, the defendant there introduced affirmative evidence at trial that a railroad crossing had been checked at two-week intervals for each of the 12 months preceding the accident and the signals were found to have been in working order. Later, a new trial was granted on the basis of newly discovered evidence when it was disclosed that the crossing had not, in fact, been checked during any of the six weeks prior to the accident and that the defendant there had deliberately falsified records to indicate that the crossing had been checked.

Clearly the situations presented in *Ostendorf* and *Lubbers* are substantially different from the situation presented in the instant case. The record here is void of any evidence that defendant attempted to mislead the plaintiff or to affirmatively conceal any of the information sought in plaintiff's request (f). Rather, as previously indicated, defendant openly told plaintiff on at least two occasions that it was refusing to provide information and records prior to 1977 because such information was, in its judgment, irrelevant to the issues in this case. Plaintiff's failure to challenge defendant's objections to production if she deemed that particular information necessary to a suitable disposition of her case, demonstrated a lack of due diligence on her part, which could not be attributed to any inappropriate action on the part of the defendant.

Furthermore, we find that contrary to plaintiff's assertions here, the discovery request in Yankovich was not, under the circumstances, identical to the discovery request in *Malek* even though it included the same paragraph (f). The discovery request in Yankovich was, we believe, broader than the discovery request in *Malek*, since the discovery in Yankovich was not subject to the objection that defendant filed in the *Malek* case. Also in the Yankovich case, subsequent to the inspection of documents at Lederle's Pearl River, New York, facility, plaintiff specifically requested Lederle's complaint files for the years 1957 through 1982 inclusive. No such similar request was made in *Malek*, and the defendant in Yankovich made no objection to this request. Thus, the documents that plaintiff requested and received in Yankovich, and which now form the basis for her section 2—1401 peti-

tion (exhibits 1 though 71), were not, contrary to her claims, the result of the same production request because of the different circumstances surrounding the request in the two cases, *i.e.*, defendant Lederle's objection in *Malek* and plaintiff's specific request in Yankovich.

We further note that the trial court in its ruling improperly described the requirement of diligence that a petitioner must demonstrate under a section 2—1401 petition and, thus, applied an incorrect test when it found that the plaintiff had been diligent. The court erroneously concluded that there was no issue concerning the petitioner's diligence, stating:

"The question of diligence is not [present] *** here, the record shows that petitioner acted diligently in filing its [2—1401] petition."

However, the law is clear that the diligence required of a petitioner relates both to the discovery of the evidence as well as to the timeliness of plaintiff's post-trial petition. (See *Lubbers v. Norfolk & Western Ry. Co.* (1983), 118 Ill. App. 3d 705, 454 N.E.2d 1186.) In the context of a section 2—1401 petition based on the discovery of new evidence, diligence requires that a party be free from fault or negligence relating to the evidence claimed to have been withheld or not presented. (See *Ostendorf v. International Harvester Co.* (1982), 89 Ill. 2d 173, 433 N.E.2d 253.) Accordingly, the relevant inquiry in such circumstances is not whether the petitioner was diligent in filing its petition, but, rather, whether the petitioner lacked diligence in failing to discover or present the evidence or documents. In other words, as we have stated previously, the failure to present the evidence must not have been the result of the petitioner's own lack of diligence.

Here, the trial court erred by failing to address defendant's contention that petitioner's failure to discover the documents was the direct result of petitioner's own lack of diligence. Contrary to the trial court's observation, due diligence was an issue here and was not satisfied by the plaintiff's diligence in filing her 2—1401 petition in apt time.

The second requirement that the petitioner here was required to meet in order for her to succeed on her section 2—1401 petition was that if the grounds allegedly entitling her to relief under section 2—1401 had been made known at the trial, it would have prevented the entry of the judgment against her. (See *Lubbers v. Norfolk & Western Ry. Co.* (1984), 105 Ill. 2d 201, 473 N.E.2d 955.) While consideration of this second requirement is not necessary to our decision here, we further believe that the petitioner in the present case has also failed to meet this requirement as well as the due diligence requirement.

In reviewing the alleged "newly discovered" evidence set forth

in exhibits 1 through 71, which is the basis upon which plaintiff seeks a new trial, we find that evidence concerning the issues involved in exhibits 1 through 71 was, in fact, introduced at the trial. Exhibits 1 through 71 are merely cumulative evidence and are not of a conclusive or controlling character and, therefore, would not have prevented entry of the judgment in this case. See *Ulrich v. Glyptis* (1967), 79 Ill. App. 2d 447, 224 N.E.2d 581; *Kirchoff v. Tzinberg's Park "N" Shop Food Stores, Inc.* (1955), 7 Ill. App. 2d 201, 129 N.E.2d 279.

Although, as plaintiff correctly asserts, a section 2—1401 petition is addressed to the sound discretion of the trial court, a reviewing court is, nevertheless, justified in disturbing the judgment of the trial court where, as here, there has been an abuse of discretion. (*Beverly Bank v. Pentagon Investment Co.* (1981), 100 Ill. App. 3d 1074, 472 N.E.2d 835.) Plaintiff argues that she is entitled to a new trial to insure that justice is done in this case. However, as this court held in *Petrauskas v. Motejunas* (1971), 133 Ill. App. 2d 293, 296-97, 272 N.E.2d 805, the interests of justice in these circumstances are more compelling than the personal interests of either party:

> "Prompt disposition of litigation already backlogged many years on our crowded court calendars compels the exercise of restraint in granting new trials in cases where available facts could have been discovered by diligent investigation. That which would best serve the interests of the dilatory party is not the only factor to be considered. *Danforth v. Checker Taxi Co., Inc.* (1969), 114 Ill. App. 2d 471, 253 N.E.2d 114." 133 Ill. App. 2d 293, 296-97, 272 N.E.2d 805.

Thus, we find that based on the record and consistent with the policy of preventing the relitigation of matters that should have been properly litigated in the original trial, the plaintiff failed to meet the requirements for the granting of a section 2—1401 motion, and the trial court here improperly granted the petition.

Accordingly, for all the foregoing reasons, the judgment of the circuit court of Cook County granting plaintiff's section 2—1401 petition is reversed, and the original judgment in favor of defendant Lederle is hereby reinstated.

Judgment reversed.

CAMPBELL and O'CONNOR, JJ., concur.