*In re* MARRIAGE OF EVANGELIA TRAVLOS, Petitioner-Appellee, and DIONISIOS TRAVLOS, Respondent-Appellant.

First District (4th Division)   No. 1—90—1355

Opinion filed September 5, 1991.—Rehearing denied October 3, 1991.

John Thomas Moran, Jr., of Chicago, for appellant.

Matthew J. Berardi, of Chicago, for appellee.

JUSTICE LINN delivered the opinion of the court:

The circuit court of Cook County entered a judgment dissolving the marriage of petitioner, Evangelia Travlos, and respondent, Dionisios Travlos. Included in the judgment was a distribution of the marital assets.

Dionisios subsequently filed a petition for relief from judgment. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1401.) He petitioned the trial court to vacate the judgment and redistribute the marital assets. The trial court dismissed the petition. Dionisios then filed a motion to vacate the dismissal; the trial court denied the motion. Dionisios appeals from both orders, contending that the trial court exceeded its discretion.

We affirm the orders of the trial court.

BACKGROUND

A

The record contains the following pertinent facts. On October 22, 1985, Evangelia filed an amended petition for dissolution of marriage. In the petition, after describing their marital property, Evangelia alleged that she had "no assets, income, or property."

On October 28, 1987, Evangelia filed a response to Dionisios' request for production of documents. She stated in pertinent part:

"1. Petitioner [Evangelia] has had no legal, equitable or beneficial interest [in] any bank accounts for the period of January 1, 1984 to present, except as Guardian of Nick Vasilatos in that capacity held a checking and a money market account held at the First National Bank of Lincolnwood from approximately December 1985 until his demise in March 1987. No documents pertaining to these accounts are in possession of [Evangelia], being retained in the possession of [her probate attorney]."

On November 10, 1987, Evangelia filed an affidavit in which she stated as follows:

"II. *** Petitioner [Evangelia] further states that she personally owns no real estate in any foreign country but had acquired an interest in vacant farm land belonging to her uncle [Nicholas Vasilatos] and she believes that a Greek Court divested her of that interest. Matters pertaining to said proceeding both in the Probate Court of Cook County and in a Greek

Court were documented by papers now in the possession of her probate attorney ***.

* * *

[III]E. Affiant [Evangelia] had personal control over two bank accounts at the First National Bank of Lincolnwood, a checking account and a Money Market Account in her name and that of Nicholas Vasilatos, her uncle, a disabled person. These accounts became the subject matter of a Probate proceeding handled by [Evangelia's probate attorney] and he was given all of the documents in her possession and he retains same to this date."

On November 16, 1987, Evangelia testified in a deposition as follows:

"Q. Are there any other accounts that you have any money in at the present time?
A. No.
Q. Any accounts in Greece?
A. No.

* * *

Q. Is that property now yours?
A. No, they took it away from me.
Q. When did they take it away?
A. I don't know exactly.
Q. Were you in Greece at the time they took it away?
A. I was, but I didn't know, I found out later.
Q. When you were in Greece it didn't happen that they took this property away from you?
A. No. They did, they have it, but I didn't know at the time ***.
Q. Who was the person who claimed the right to the property?
A. His nephew.
Q. So as you know, this property was taken away from you and now belongs to the nephew?
A. Yes."

On April 11, 1988, Evangelia testified during her direct examination at trial as follows. Dionisios owned property in Greece prior to their marriage, but they built a house on the property subsequent to the marriage. Further, they spent between $2,000 and $3,000 annually, for 16 or 17 years, to maintain the property. The fair market value of the property with the house was between $40,000 and $50,000. She last saw this property in 1980. Evangelia's attorney

asked her whether she or Dionisios owned any other real estate in Greece. She testified that Dionisios owned farmland in Greece that he acquired prior to the marriage.

During cross-examination by Dionisios' counsel, Evangelia provided additional testimony on Dionisios' land in Greece. Dionisios' counsel questioned Evangelia on how Dionisios acquired the land, and the extent of the furnishings of the house in Greece. Dionisios' counsel did not question Evangelia on her interest in the land acquired from her uncle.

On October 27, 1988, the trial court entered judgment dissolving the marriage of Evangelia and Dionisios. The judgment also allocated their assets. One such provision is as follows:

"V. That each of the parties shall be awarded their [*sic*] respective properties located in Greece, free and clear of any interest that the other may have therein."

B

On November 23, 1988, Dionisios filed his first post-trial motion. (See Ill. Rev. Stat. 1987, ch. 110, par. 2—1203.) Dionisios raised therein various issues pertaining to the distribution of marital property. On January 26, 1989, the trial court denied the motion.

On February 7, 1989, Dionisios filed a second post-trial motion—a petition to vacate the judgment pursuant to section 2—1401 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—1401). Dionisios alleged as follows. He learned facts that would have changed the judgment had they been available. Dionisios learned of these facts from a pleading in the estate proceeding of Evangelia's uncle. Further, Evangelia knew of these facts long before the trial court entered judgment, "but she misled [the trial court] by either omitting to reveal them affirmatively or by deliberately stating falsehoods when asked about them specifically."

Dionisios accused Evangelia of individually owning land in Greece. On August 26, 1985, Evangelia contracted with her uncle to buy, based on Greek property law, the "naked title" to a parcel of land in Greece. In May 1986, Evangelia contracted to buy the "use or usufruct" of the same property.

Dionisios noted that litigation ensued in Greece over the right to possess the above-mentioned property. He alleged that Evangelia prevailed in the Greek litigation approximately one year prior to the entry of judgment. Dionisios charged that Evangelia "lied on a number of occasions *** and falsely stated that she had no right to the possession or title to that property." As an example, Dionisios specifically

referred to Evangelia's November 16, 1987, deposition, where she stated that the land was taken away from her. Dionisios alleged that at that deposition, Evangelia "knew that she had prevailed in the litigation in Greece and was the legal owner of the full title to that property." Further, despite her victory in that litigation, Evangelia "has continually maintained the contrary throughout these proceedings."

The petition also alleged that on September 2, 1985, Evangelia's uncle devised to her various parcels of farmland in Greece. The petition alleged that Evangelia "omitted to inform the [trial court] of her ownership of these parcels of real estate."

Dionisios also accused Evangelia of having "control and access to a secret account at an unknown financial institution in Athens, Greece, having a current balance of *** approximately $23,000.00." Dionisios alleged that Evangelia concealed the existence and her use of this fund. On April 17, 1990, the trial court granted Evangelia's motion to strike and dismissed Dionisios' section 2–1401 petition to vacate the judgment.

On May 9, 1989, Dionisios filed a third post-trial motion. In his "Emergency Motion," he asked the trial court to vacate the dismissal of his section 2–1401 petition. Dionisios essentially repeated the allegations in his section 2–1401 petition. He attached a certified English translation of a decision of a Greek appellate court, which apparently reversed a lower court and ruled in Evangelia's favor. The appeal was decided on November 24, 1987, and, according to its procedure, entered on December 8, 1987. Dionisios specifically charged that Evangelia "never revealed to [the trial court] or corrected her deposition testimony that the Greek property had been ruled to be hers." On May 11, 1989, the trial court denied Dionisios' emergency motion. Dionisios appeals from the trial court's dismissal of his section 2–1401 petition to vacate the judgment, and from the trial court's denial of his emergency motion to vacate the dismissal.

OPINION

The legal principles that pertain to a petition for relief from judgment are quite settled. The cases are legion. A trial court cannot review its own judgment after the expiration of 30 days from the date of entry. (*Brockmeyer v. Duncan* (1960), 18 Ill. 2d 502, 505, 165 N.E.2d 294, 296.) However, section 2–1401 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2–1401), formerly section 72 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 72), provides a procedure for obtaining relief from final orders and judgments

after 30 days from the date of entry. *Plavec v. Plavec* (1961), 30 Ill. App. 2d 345, 348, 174 N.E.2d 578, 579.

The statute substitutes a simple remedy for the relief previously available through various common law writs. The function of a section 2—1401 petition is to bring before the court that rendered a judgment facts not appearing of record which, if known to the court at the time judgment was entered, would have prevented its rendition. (*Petrauskas v. Motejunas* (1971), 133 Ill. App. 2d 293, 296, 272 N.E.2d 805, 807-08.) Although courts apply the provision with the aim of achieving justice, section 2—1401 was never intended to give a litigant a new opportunity to do that which should have been done in an earlier proceeding. The provision was never intended to relieve a litigant of the consequences of his mistake or negligence. *Malek v. Lederle Laboratories* (1987), 152 Ill. App. 3d 493, 497, 504 N.E.2d 893, 895.

A section 2—1401 proceeding is a new action separate and apart from the proceeding in which the judgment complained of was entered. A section 2—1401 petitioner bears the burden to allege and prove facts sufficient to justify relief. (*Petrauskas*, 133 Ill. App. 2d at 296, 272 N.E.2d at 808.) Where the petition fails to state a cause of action or shows on its face that the petitioner is not entitled to relief, the petition is subject to a motion to dismiss. *Ostendorf v. International Harvester Co.* (1982), 89 Ill. 2d 273, 279-80, 433 N.E.2d 253, 256.

Based on the foregoing, a section 2—1401 petitioner must allege and prove: (1) that if the ground for relief had been known at the time judgment was entered, it would have prevented the entry of judgment against him; and (2) that failure to discover and present the ground for relief was not the result of his own lack of diligence. (*Ostendorf*, 89 Ill. 2d at 283, 433 N.E.2d at 257; *Mutual National Bank v. Kedzierski* (1968), 92 Ill. App. 2d 456, 460, 236 N.E.2d 336, 338.) Specifically, to set aside a judgment based on newly discovered evidence, it is quite settled that the evidence must be such as could not reasonably have been discovered at the time of or prior to the entry of the judgment. *Meudt v. Travelers Insurance Co.* (1978), 57 Ill. App. 3d 286, 294, 372 N.E.2d 902, 908; *Ulrich v. Glyptis* (1967), 79 Ill. App. 2d 447, 453-54, 224 N.E.2d 581, 585.

Lastly, we noted earlier that Evangelia did not answer the allegations in Dionisios' section 2—1401 petition. Rather, the trial court granted her motion to strike. Therefore, we must accept as true his well-pled allegations, and the only issue before this court is whether the petition adequately sets forth sufficient facts to show that the

trial court exceeded its discretion in dismissing the petition. (See *Johnson v. Steiner* (1988), 179 Ill. App. 3d 556, 560, 534 N.E.2d 391, 394.) The petition is addressed to the sound discretion of the trial court. A court of review will disturb the trial court's ruling only if the trial court clearly exceeded its discretion. *Meudt*, 57 Ill. App. 3d at 294, 372 N.E.2d at 908.

Applying these principles to the case at bar, we conclude that Dionisios failed to plead sufficient facts to support the requirements of a section 2—1401 petition. Dionisios alleged essentially that Evangelia: (1) bought an interest in land, and subsequently full title thereto, from her uncle, Nicholas Vasilatos; (2) received a devise of additional Greek land from the same uncle; and (3) held a "secret" bank account in Greece.

■ We first turn to Dionisios' allegation that Evangelia held approximately $23,000 in "a secret account at an unknown financial institution in Athens, Greece." Dionisios does not supply any supporting affidavits or other information, such as the name of the bank, to support this bald allegation. Only well-pleaded facts stand admitted for the purpose of our review of a section 2—1401 petition. (*Kedzierski*, 92 Ill. App. 2d at 462, 236 N.E.2d at 339.) We hold that this allegation is insufficient to establish Dionisios' right to section 2—1401 relief. See *State Bank v. Fair Winds, Inc.* (1979), 73 Ill. App. 3d 597, 600-01, 392 N.E.2d 638, 640-41; *Kedzierski*, 92 Ill. App. 2d at 461-63, 236 N.E.2d at 338-39.

We next turn to Dionisios' allegations that Evangelia individually owned land in Greece. Dionisios alleged that on August 26, 1985, Evangelia bought an interest in Greek land and, in May 1986, she bought full title thereto, from her uncle. Dionisios also alleged that on September 2, 1985, Evangelia's uncle devised to her various additional parcels of farmland in Greece.

■ After closely reviewing the record, we conclude that the evidence that Dionisios presents could reasonably have been discovered prior to the entry of judgment. Evangelia notified Dionisios of these facts during pretrial discovery approximately one year prior to the entry of judgment. She stated that she had acquired the interest in the land, but she believed that a Greek court divested her of that interest. She additionally stated that she was her uncle's guardian and that he died in March 1987. She also stated that her probate attorney possessed documents and other information pertaining to all of these matters. At trial, Dionisios' counsel cross-examined Evangelia on several matters, but did not question her on her interest in the land acquired from her uncle. Armed with Evangelia's statements several

months prior to trial and approximately one year prior to judgment, Dionisios should reasonably have been able to discover and present this evidence prior to the entry of judgment. This conclusion, standing alone, would require us to affirm the trial court's dismissal of the section 2—1401 petition.

Dionisios, however, contends that he exercised due diligence in presenting the evidence of Evangelia's Greek real estate. He alleged in his section 2—1401 petition not only that the proffered evidence would have changed the result, but also that Evangelia concealed the information. Dionisios is correct that the fraudulent concealment of evidence is a factor in determining whether a section 2—1401 petitioner exercised due diligence in discovering and presenting the ground for relief. (*Malek*, 152 Ill. App. 3d at 497-98, 504 N.E.2d at 895-96.) Courts reason that when an opponent suppresses information, as to prevent the inquirer from realizing what has occurred, the failure to discover the information is the result of the opponent's fault and not the inquirer's negligence. 152 Ill. App. 3d at 499, 504 N.E.2d at 897, quoting *Ostendorf*, 89 Ill. 2d at 284-85, 433 N.E.2d at 258.

To prove fraud, the complainant must show that the other party falsely stated a material fact or concealed a material fact that he had a duty to disclose; the fact was intentionally misstated or concealed to induce the complainant to act; and that the complainant detrimentally relied upon the misstatement or the nonexistence of the fact. The complainant bears the burden of proving fraud by clear and convincing evidence. *In re Marriage of Bashwiner* (1982), 107 Ill. App. 3d 772, 779, 438 N.E.2d 490, 495 (and cases cited therein).

■ After carefully reviewing the record, we conclude that the element of detrimental reliance is absent from the case at bar. We initially note that Dionisios did not even allege in his section 2—1401 petition that Evangelia's conduct was the cause of his delay in presenting the new evidence. This defect alone requires us to affirm the trial court's dismissal. See *Jordan v. Jordan* (1976), 38 Ill. App. 3d 781, 784, 349 N.E.2d 116, 119-20; *Kedzierski*, 92 Ill. App. 2d at 462, 236 N.E.2d at 338-39.

Even if Dionisios made such an allegation, the record shows that he could not support it. As an example of Evangelia's fraud, Dionisios cited the Greek litigation of her interest in the land which she bought from her uncle. Evangelia disclosed this interest during pretrial discovery: a November 10, 1987, affidavit and a November 16, 1987, deposition. She further stated however, that litigation ensued, and that she believed that she lost her interest in the land. In his subsequent "Emergency Motion," Dionisios presented a certified English

translation of a decision of a Greek appellate court. The court apparently reversed a lower court and ruled in favor of Evangelia. In his section 2—1401 petition, Dionisios alleged that at the time of her affidavit and deposition, Evangelia "knew that she had prevailed in the litigation in Greece and was the legal owner of the full title to that property."

This example of Evangelia's fraud is illogical and lacks merit. The decision of the Greek appellate court states, apparently according to its procedure, that the court decided the case on November 24, 1987, and entered judgment on December 8, 1987. It is logically impossible for Evangelia to have lied on November 10 and 16 about an outcome that occurred on November 24. Dionisios' section 2—1401 petition and subsequent motion do not attempt to explain the absurdity. "A statement which is merely an expression of opinion or which relates to future or contingent events, expectations or probabilities, rather than to pre-existent or present facts, ordinarily does not constitute an actionable misrepresentation." (*Metropolitan Bank & Trust Co. v. Oliver* (1972), 4 Ill. App. 3d 975, 978, 283 N.E.2d 62, 64; *Plavec*, 30 Ill. App. 2d at 349, 174 N.E.2d at 579.) Courts regard such statements as mere promises or conjectures upon which the other party has no right to rely. *Hayes v. Disque* (1948), 401 Ill. 479, 488, 82 N.E.2d 350, 355.

Pursuing this argument, Dionisios alleges throughout his section 2—1401 petition and subsequent motion that Evangelia never "corrected the deposition testimony that the Greek property had been ruled to be hers." It is quite settled, however, that mere silence or a failure to communicate information, absent a duty to do so, does not constitute fraud. *Zanbetiz v. Trans World Airlines, Inc.* (1966), 72 Ill. App. 2d 192, 201, 219 N.E.2d 98, 102-03.

Dionisios was obliged to prove his case. The appeal before the Greek court was decided approximately 10 to 11 months prior to the entry of judgment in the case at bar. He had notice of the Greek litigation approximately five months prior to trial. At trial, Dionisios' counsel did not question Evangelia on the Greek litigation. The record does not support Dionisios' allegations of fraud.

In sum, Dionisios' allegations of fraud fail because he does not, and the record demonstrates that he cannot, show that Evangelia's statements caused his delay in presenting his new evidence. The issue of detrimental reliance necessarily includes the question of whether Dionisios had a right to rely on Evangelia's alleged misrepresentations. We view this question in light of all of the facts of which Dionisios had actual notice, and also of such facts as he might have obtained by the exercise of ordinary prudence. If Dionisios did not avail

himself of the means of knowledge open to him, he cannot be heard to say that he was misled by misrepresentations. (See *Plavec*, 30 Ill. App. 2d at 349, 174 N.E.2d at 580; see also *Lagen v. Lagen* (1973), 14 Ill. App. 3d 74, 81, 302 N.E.2d 201, 206.) We cannot say that the trial court exceeded its discretion in dismissing Dionisios' section 2—1401 petition and denying his subsequent motion to vacate the dismissal.

For the foregoing reasons, the orders of the circuit court of Cook County are affirmed.

Affirmed.

JIGANTI, P.J., and JOHNSON, J., concur.