MARGARET KEARNEY, Indiv. and as Special Adm'r for the Estate of Robert Kearney, Deceased, Plaintiff-Appellant, v. BRAKEGATE, LTD., *et al.*, Defendants (Owens-Corning Fiberglas Corporation, Defendant-Appellee).

Fourth District    No. 4—93—0168

Argued August 24, 1993.—Opinion filed June 27, 1994.

James Wylder and James Walker (argued), both of James Walker, Ltd., of Bloomington, for appellant.

John Dames and Carolyn Quinn (argued), both of Kelley, Drye & Warren, of Chicago, for appellee.

JUSTICE COOK delivered the opinion of the court:

In 1989 Robert Kearney (decedent) and his wife Margaret

(plaintiff) filed a claim against Owens-Corning Fiberglas (OCF) and other manufacturers of asbestos-containing products, seeking damages allegedly arising from decedent's exposure to asbestos. Prior to trial all defendants were dismissed except OCF. The case proceeded to trial solely on the issues of causation and damages; the jury returned a verdict for OCF. Plaintiff appeals, contending the trial court erred in refusing her request to call OCF's corporate medical director, Jon Konzen, M.D., as a rebuttal witness, and erred in refusing her tendered jury instruction which explained defendant had failed to comply with her Rule 237 (134 Ill. 2d R. 237) request. We reverse and remand.

Decedent worked at the Union Asbestos Plant (Plant) in Bloomington, Illinois, for six weeks in 1955. OCF purchased the Plant in April 1970. Plaintiff's complaint alleged decedent contracted asbestosis as a result of his exposure to asbestos fibers at the Plant and died in 1991 of lung cancer caused by his exposure to asbestos. Plaintiff contended OCF's conspiracy to misrepresent or conceal health hazards associated with asbestos exposure caused decedent's death. Two months prior to trial plaintiff made a Rule 237 request for OCF to produce Konzen at trial. The trial court ordered that Konzen be produced, noting that he was in good health, physically able to appear, and that his presence at trial would not interfere with the operation of OCF's business. OCF refused to produce Konzen, and the trial court sanctioned OCF by entering a default judgment against it on the issue of liability. The case proceeded to jury trial on the issues of proximate cause and damages.

OCF's theory in this case was that exposure to asbestos was not a cause of lung cancer. OCF conceded that exposure to asbestos which had proceeded to the stage of asbestosis was a cause of lung cancer. Even with asbestosis, however, OCF contended the asbestosis must be clinically diagnosable, that is, detectable by X ray, in order for asbestosis to be a cause of lung cancer.

At trial plaintiff called decedent's treating physician, Maury Topolosky, M.D. Topolosky first examined decedent in November 1987. Decedent had a "history of smoking abuse"; "he had been a two to three pack a day smoker for over 20 years, but he had quit about eight and one half years before" the 1987 exam. Decedent's medical profile indicated chronic obstructive pulmonary disease, comprised of emphysema and chronic bronchitis, pleural disease, heart disease, coronary artery disease, status post myocardial infarction, and a history of angina. Decedent had total lung capacity of 129%, which is consistent with an obstructive defect, but Topolosky testified such results are "not diagnostic of any disease."

Topolosky stated the chest X rays taken in December 1987 showed "increased markings in the lung from some kind of scarring or fibrosis." Topolosky biopsied decedent's lung tissue in December 1987; the biopsy showed "some scarring, fibrosis, a little bit of inflammation," and "asbestos bodies." He indicated the biopsy showed "changes consistent with asbestosis." However, the biopsy also showed some inflammation, and Topolosky agreed that "inflammation can cause fibrotic changes in the lung." When asked what caused the fibrosis shown on the X ray and in the biopsy, Topolosky replied, "we would have to assume it was from asbestosis." He was the first doctor to diagnose decedent with asbestosis. Topolosky based his diagnosis on the asbestos bodies found in the biopsy, not on the X ray. He added that scarring of lung tissue visible on X ray cannot be attributed to any specific entity, and could in fact be caused by an infection unrelated to asbestos exposure.

Topolosky indicated both asbestos exposure and cigarette smoking cause lung cancer, but he could not quantify which entity contributed more to decedent's cancer since "smoking cancer" cannot be distinguished from "asbestos cancer." He stated that asbestos and smoking both contributed to decedent's chronic obstructive pulmonary disease. According to Topolosky, many factors contributed to decedent's death, including lung cancer, asbestosis, and chronic obstructive pulmonary disease, which includes bronchitis and emphysema. Topolosky indicated on cross-examination he was unfamiliar with the study published in the British Journal of Industrial Medicine in 1991 regarding "asbestosis as a precursor of asbestos-related lung cancer." He agreed with a conclusion from the article: "In this population [of workers exposed to asbestos], excess risk of lung cancer was restricted to workers [with] X-ray film evidence of asbestosis, a finding consistent with the view that asbestos is a lung carcinogen because of its fibrogenicity." Topolosky indicated the article "seems to confirm" that in order to have an increased risk of developing lung cancer as a result of asbestos exposure, there must be a clinically diagnosed condition of asbestosis.

Herbert Abrams, M.D., testified as plaintiff's medical expert. Abrams had never examined decedent. He testified that decedent had "asbestosis as well as several other conditions." In Abrams' opinion decedent's additional physical ailments included chronic obstructive pulmonary disease, chronic bronchitis, pulmonary emphysema, bronchiectasis, and ultimately lung cancer. He determined the references to "fibrosis" in the medical records indicated "asbestosis." Abrams indicated that on an X ray it can be difficult to distinguish damage to the lung caused by cigarette smoking and asbestos

exposure; however, the fibrosis shown on decedent's X ray "were not those that one would associate with smoking." According to Abrams, "virtually all authorities" agree that asbestos is an important cause of lung cancer. He testified that asbestos itself is a cause of lung cancer; it is not necessary for an individual to develop asbestosis in order to develop lung cancer from asbestos exposure. Abrams concluded that both asbestos exposure and heavy smoking contributed to decedent's lung cancer, and that "lung cancer was the final cause of his death." However, he could not apportion the percentage of damage caused by each factor.

David Cugell, M.D., testified as OCF's medical expert. Cugell had never examined decedent. He commented that decedent had been a very heavy cigarette smoker for over 20 years and had been exposed to asbestos for only a few months. Cugell stated decedent's lung function tests "showed very severe air flow limitation." Decedent's lung capacity of 129% showed a "compensatory change that commonly occurs in people with severe emphysema." Decedent's large lung capacity would be inconsistent with a restrictive lung disease such as asbestosis. In Cugell's opinion cigarette smoking caused decedent's emphysema, bronchitis, severe obstructive impairment, and lung cancer. Cugell testified that asbestos exposure caused decedent's pleural thickening, but that condition did not affect the function of decedent's lungs.

Although decedent had been exposed to asbestos for several months and a lung biopsy showed the presence of asbestos bodies in decedent's lung, Cugell testified that decedent did not have asbestosis. Cugell indicated that asbestosis "has very specific diagnostic criteria" and decedent's X rays were not consistent with the clinical diagnosis of asbestosis. Relying on decedent's X rays, Cugell disagreed with Topolosky's diagnosis that decedent had asbestosis. Based on a recent study published in 1991 in the British Journal of Industrial Medicine, Cugell stated, "workers [exposed to asbestos] in whom no radiological evidence of fibrosis could be seen had exactly the same frequency or incidence of cancer as the ordinary population, but those that had X[ ]ray evidence of fibrosis had a significantly higher likelihood of developing cancer." Cugell had changed his previously held opinion because of this study, and he now believed clinically diagnosed asbestosis must be present to increase an individual's risk of lung cancer. Cugell stated the British Journal of Industrial Medicine is "the premier journal in its field." He testified that decedent did not have clinically diagnosed asbestosis and concluded decedent's asbestos exposure did not cause his lung cancer.

After Cugell testified, OCF rested; plaintiff then made a request to call Konzen as a rebuttal witness in front of the jury. OCF argued:

"Your Honor has already issued the sanction. Now he wishes to go beyond the rather stiff sanction issued by this court finding against me on liability.

* * *

I think that the liability issues—that issue has already been decided by this court and the sanctions have already been determined by this court. And all this is [ ] an attempt, Your Honor, is an attempt to punish Owens-Corning Fiberglas ***. It merely represents an attempt to inflame the jury so the jury will punish Owens-Corning Fiberglas for the refusal to produce Dr. Konzen."

Plaintiff argued:

"I would agree that had you [the court] done what we asked and just submitted the question of how much[,] there wouldn't be any basis to present Konzen, but that's not what you did. You let them try the issue of proximate cause and you just got done hearing them present to this jury the, the paid voice saying you don't—you have to have asbestosis in order to be at an increased risk of lung cancer.

Now you have in front of you Exhibit 3 in, in granite that Konzen knows about these things. He knows about whether exposure to asbestos increases the [incidence] of lung cancer. *** So the fact that Ko[n]zen didn't know Bob Kearney before he was deceased or even doesn't know him today has got nothing to do with his ability to come in here and say, hey, is it true or not what [plaintiff's counsel's] been saying that if you are exposed to asbestos, you are at an increased risk of lung cancer."

The court denied plaintiff's request, stating:

"I hear the argument being made for calling the witness that Ko[n]zen, equaling Owens-Corning, if here to testify would admit that it is his knowledge asbestosis or the inhalation, ingestion of asbestos causes lung cancer. However, particularly in view of my admission of Plaintiff's Exhibit 4 which says the same thing for Owens-Corning, I don't believe that it is necessary whatsoever for the plaintiff in the proof of his case, or even in the enhancement of his case, to call Dr. Ko[n]zen. And particularly because of the sanctions already imposed by his absence and refusal of Owens-Corning to produce him, I will not allow it."

The court admitted plaintiff's exhibit No. 4, a 1986 statement by OCF indicating "inhaled asbestos fibers can contribute to the production of certain lung cancers." The court also admitted plaintiff's exhibit No. 3, a 1972 memo from Konzen in which he stated "occupational exposure to asbestos is known to be [causally] related to carcinoma of the lung."

At the conclusion of all the evidence, the instruction conference was held and plaintiff offered plaintiff's instruction No. 6, which stated:

"Illinois Supreme Court Rule 237 provides that the appearance at trial of a person who at the time of trial is an employee of a party may be required by serving the party with a notice designating the person who is required to appear.

On June 12, 1992, Plaintiff filed a notice pursuant to Rule 237 requiring Owens-Corning Fiberglas Corporation to produce its Corporate Medical Director, Dr. Jon Konzen, at trial.

Owens-Corning Fiberglas Corporation has admitted that Dr. Konzen is in good health and is physically able to appear and testify. Owens-Corning Fiberglas Corporation has refused to produce Dr. Konzen."

The trial court refused plaintiff's instruction No. 6. The jury returned a verdict for OFC.

## I. REFUSAL TO ALLOW KONZEN TO BE CALLED

■ Plaintiff contends the trial court erred in refusing her request to call Konzen as a rebuttal witness in the presence of the jury. If Konzen had been called, presumably OCF would then have stated in the presence of the jury that it refused to produce him. The trial court's decision whether to allow a rebuttal witness is discretionary, and its decision will not be reversed unless the trial court abused its discretion. (*Hall v. Northwestern University Medical Clinics* (1987), 152 Ill. App. 3d 716, 721, 504 N.E.2d 781, 784; *Gabrenas v. R.D. Werner Co.* (1983), 116 Ill. App. 3d 276, 284, 451 N.E.2d 1307, 1312.) Nevertheless, plaintiff was entitled to have the jury informed, in some fashion, that OCF refused to produce Konzen after being ordered to do so by the court. Any attempt by a party to conceal or, by threat or otherwise, suppress evidence or otherwise obstruct an investigation is admissible. (*People v. Gacho* (1988), 122 Ill. 2d 221, 247, 522 N.E.2d 1146, 1158.) A jury is entitled to consider the destruction, suppression, or fabrication of evidence, as an admission. M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 801.3, at 644 (6th ed. 1994).

In *Lubbers v. Norfolk & Western Ry. Co.* (1983), 118 Ill. App. 3d 705, 454 N.E.2d 1186, aff'd (1984), 105 Ill. 2d 201, 473 N.E.2d 955, a railroad concealed evidence that its employees had not inspected a crossing signal for a six-week period prior to a collision. The jury found plaintiff guilty of contributory negligence. There was no dispute at trial that the signal was malfunctioning and had been flashing continuously for at least 24 hours before plaintiff's truck arrived at

the crossing. Nevertheless, this court held the alleged fraudulent withholding of evidence should have been admissible not just on plaintiff's exercise of care, but generally on the issue of liability, and the jury should have been instructed accordingly. " '[W]rongdoing by the party in connection with his case, amounting to an obstruction of justice is also commonly regarded as an admission by conduct. By resorting to wrongful devices he is said to give ground for believing that he thinks his case is weak and not to be won by fair means.' " (Emphasis omitted.) (*Lubbers*, 118 Ill. App. 3d at 711, 454 N.E.2d at 1191, quoting E. Cleary, McCormick on Evidence § 273, at 660 (2d ed. 1972).) The supreme court affirmed our decision in *Lubbers* without reaching the issue of admissions by conduct. *Lubbers*, 105 Ill. 2d at 211-12, 473 N.E.2d at 960.

Other examples of admissions by conduct include flight and transferring assets in advance of litigation. In *Lubbers* we cited *People v. Spaulding* (1923), 309 Ill. 292, 305, 141 N.E. 196, 202, where it was held that evidence that a person on trial for murder had killed a potential witness could be considered by the jury as an admission of guilt by conduct. In *Chicago City Ry. Co. v. McMahon* (1882), 103 Ill. 485, the court held a railroad employee's attempt to bribe a witness was evidence of an admission that the railroad company's claim was without merit.

OCF cites *People ex rel. General Motors Corp. v. Bua* (1967), 37 Ill. 2d 180, 196, 226 N.E.2d 6, 16, citing *Caryl Richards, Inc. v. Superior Court* (1961), 188 Cal. App. 2d 300, 304, 10 Cal. Rptr. 377, 380, where it was said that a court may not impose sanctions which are not designed to accomplish discovery but to impose punishment. The present case, however, involves not discovery but production of a witness at trial. Second, advising the jury of OCF's refusal would not be a sanction but would simply allow the trier of fact to know what had taken place. OCF's conduct was relevant and there is no basis for finding that it was privileged. Finally, if advising the jury were considered a sanction, the sanction would be tailored to the information withheld; the jury would not be required to rule in favor of either party, but would be allowed to give the refusal the weight it believed appropriate. See also *Adcock v. Brakegate, Ltd.* (1993), 247 Ill. App. 3d 824, 841-42, 617 N.E.2d 885, 897-98.

■ One reason given by the trial court for refusing to allow Konzen to be called was that his testimony would be cumulative. Certainly there was other evidence in the record indicating OCF's belief that exposure to asbestos alone could cause lung cancer. If Konzen had been produced, however, plaintiff may have chosen to call him and forego any other testimony. Plaintiff, not defendant,

should have the power to choose which witnesses plaintiff will call to prove his case. The jury is entitled to know that defendant refused to produce a witness after being ordered to do so by the court, even if plaintiff has been able to substantially remedy the damage by calling other witnesses. OCF's admission by conduct has probative value apart from what Konzen might have testified to. The evidence in *Lubbers* was also cumulative, but there we held the admission by conduct should have been considered by the jury.

Another reason given by the trial court for not calling Konzen was that a sanction had already been imposed. Plaintiff attempted to call Konzen during her case in chief and was prevented from doing so by OCF's refusal to produce Konzen. When the court, in advance of trial, imposed the sanction of default against OCF, did it intend that sanction would be exclusive, and that plaintiff would not be allowed to inform the jury that OCF had refused to comply with a court order to produce Konzen? What justification would the court have for taking that right away from plaintiff? The trial court's order that Konzen be produced did not offer OCF the option of producing Konzen or suffering a particular sanction. The order was that Konzen be produced.

Konzen was to testify on liability, not on damages, and it may have been thought the matter was resolved when a default judgment was entered on liability. We note, however, that "the rather stiff sanction," as OCF described it, was not much of a sanction at all. The trial court defaulted OCF on liability, but OCF was not limited to evidence on damages in the ensuing trial. Because proximate cause is an element of both liability and damages, when OCF presented evidence on lack of causation it was able to present the evidence it had wanted to present on liability. OCF was able to argue not just that plaintiff was entitled to minimal damages, but that plaintiff was not entitled to any damages at all. Indeed, OCF's brief in this court states that "[t]he jury returned a verdict of no liability," a strange development in a case where the court had supposedly entered judgment against OCF on the issue of liability. The default judgment entered here is significantly different from the default judgment in *Johnson v. Owens-Corning Fiberglas Corp.* (1992), 233 Ill. App. 3d 425, 599 N.E.2d 129, where OCF was allowed to contest only the amount of damages, and not causation. (See also *Adcock*, 247 Ill. App. 3d at 830, 617 N.E.2d at 891.) If the limited sanction here barred plaintiff from informing the jury that OCF had violated a court order, then in its actual effect the sanction was one against plaintiff, rather than against the wrongdoer, OCF.

## II. REFUSAL TO GIVE PLAINTIFF'S INSTRUCTION NO. 6

OCF argues in its brief:

"Not only was plaintiff's instruction unnecessary to a fair trial, but tendering it to the jury would have jeopardized OCF's right to a fair hearing. OCF would certainly be the object of jury animosity if plaintiff were allowed to erroneously suggest that OCF secreted evidence and refused to follow court rules." (Emphasis omitted.)

Any suggestion that OCF refused to follow court rules would not be erroneous. OCF did refuse to follow the court's order. In argument, plaintiff's counsel asked why the court should be so careful to protect OCF in this situation. We agree. Refusal to comply with a court order to produce a witness is somewhat similar to destruction of evidence, and "[a]ll reasonable presumptions will be indulged against a party who deliberately destroys evidence." *Haynes v. Coca Cola Bottling Co.* (1976), 39 Ill. App. 3d 39, 46, 350 N.E.2d 20, 26.

In *Johnson* a stipulation of the parties was read to the jury:

" 'Dr. Jon Konzen is currently the corporate medical director of [defendant]. He is in good health, and he is capable of traveling to Bloomington, Illinois[,] to testify. Defendant has refused to produce Dr. Konzen to testify in this case.' " (*Johnson*, 233 Ill. App. 3d at 432, 599 N.E.2d at 134.)

In *Johnson* the trial court also gave an instruction similar to Illinois Pattern Jury Instructions, Civil, No. 5.01 (see Illinois Pattern Jury Instructions, Civil, No. 5.01 (3d ed. 1989) (hereinafter IPI Civil 3d)), that where a party fails to produce a witness within its power to produce, the jury may infer that the testimony of the witness would be adverse to that party. (*Johnson*, 233 Ill. App. 3d at 436, 599 N.E.2d at 136.) No instruction was given in *Johnson* on admissions by conduct.

It has been suggested that instructions should not be given on admissions, specifically on flight as evidence of negligence. (See IPI Civil 3d Nos. 4.01, 4.02.) The IPI comments indicate that an instruction on this subject would unduly emphasize a single portion of the evidence and that the subject is better addressed in closing argument. (IPI Civil 3d No. 4.01, Comment, at 4—3.) As mentioned above, however, the jury must somehow be informed of the admission, and an instruction is one way of doing that. In this case we have held that the trial court erred in not allowing Konzen to be called in the presence of the jury. We accordingly need not consider whether the trial court erred in refusing plaintiff's instruction No. 6.

Reversed and remanded.

KNECHT and GREEN, JJ., concur.