SECOND DIVISION

November 10, 1998

No. 1-96-3893

JEANNE R. MALKIN, )

)

Petitioner-Appellee, )

Cross-Appellant, )

) APPEAL FROM THE CIRCUIT

v. ) COURT OF COOK COUNTY.

)

JUDD D. MALKIN, )

)

Respondent. )

-----------------------------------) HONORABLE RICHARD S.

) KELLY, JUDGE PRESIDING.

PRETZEL & STOUFFER, CHARTERED, )

)

Respondent-Appellant, )

Cross-Appellee. )

JUSTICE GORDON DELIVERED THE OPINION OF THE COURT:

Pretzel & Stouffer, Chartered (hereinafter referred to as Pretzel Stouffer), the respondent, appeals from the trial court's vacatur of a portion of the judgment entered on March 23, 1994 awarding them fees for their representation of Jeanne R. Malkin, the petitioner, in her marriage dissolution action against Judd D. Malkin.  During dissolution proceedings, Malkin
(footnote: 1) waived her right to a fee hearing under section 508 of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/508 (West 1992)) (hereinafter referred to as "section 508").  One year later, she petitioned the circuit court to vacate a portion of the judgment, pursuant to section 2-1401 of the Code of Civil Procedure (the Code) (735 ILCS 5/2-1401 (West 1994)) (hereinafter referred to as "section 2-1401"), alleging that the fees were excessive and that her waiver of the hearing on those fees was the result of undue influence and breach of fiduciary duty by her attorney, Gemma Allen of Pretzel Stouffer.  After extensive hearing on the petition, the trial court granted petitioner's section 2-1401 petition.  While finding that Malkin's waiver was not the result of undue influence, the court nevertheless vacated the portion of the dissolution judgment awarding fees to Pretzel Stouffer and to various professionals retained by that firm on behalf of Malkin.  The court found Malkin's waiver to be ineffective because some of the fees were unreasonable or were not supported by billing statements.  Pretzel Stouffer appeals from that order pursuant to Supreme Court Rule 304(b)(3) (155 Ill. 2d R. 304(b)(3)).  Malkin cross-appeals from the trial court's denial of her petition relative to the fees of one of the professionals retained by Pretzel Stouffer, Marjorie O'Connell.

On appeal, Pretzel Stouffer argues that the trial court erred in granting section 2-1401 relief because:  (1) Malkin presented no facts that were unknown to the circuit court when it rendered the dissolution of marriage judgment; (2) Malkin failed to establish due diligence; and (3) Malkin failed to establish that Pretzel Stouffer's fees were unreasonable.  In her cross-

appeal, Malkin argues that the trial court erred in failing to vacate the fee award of $163,000 to Marjorie O'Connell, a divorce tax specialist, hired by Pretzel Stouffer.

BACKGROUND FACTS

A.  Malkin's Section 2-1401 Petition

In her section 2-1401 petition, filed on March 23, 1995, Malkin sought to vacate the portion of the judgment relating to attorney fees and costs.  Judd Malkin was to pay $1,550,000 of those fees, and Malkin was to pay the balance.  Malkin's petition alleged that the fees were not properly determined to be owed and were the result of an "extraordinarily outrageous breach of fiduciary duty" to Malkin by Pretzel Stouffer attorney Gemma Allen.  She alleged that Allen engaged in manipulative conduct designed to take advantage of her by persuading her that Allen was her friend.  She described the close, personal relationship that developed between herself and Allen from the time she retained Pretzel Stouffer until November 1994.  Malkin alleged that subsequent to the entry of the dissolution judgment, Allen became "very cold and distant."

Malkin further alleged that she was not afforded her right to a section 508 hearing on attorney fees prior to entry of the dissolution judgment.  She alleged that she had not been properly advised of her right to contest the issue of attorney fees or to seek independent legal advice.  She also alleged that Pretzel Stouffer was not entitled to attorney fees because it did not file or present the court with a petition for fees detailing the services that it rendered.  She alleged that the fees of Pretzel Stouffer were "outrageously excessive"; that Pretzel Stouffer's entries were nonspecific, vague, duplicative and lacking of the necessary requirements.  She also alleged that Pretzel Stouffer did not give her detailed reports of the costs incurred for the services of the professionals it hired on her behalf.

Malkin further alleged that her agreement regarding payment of attorney fees to Pretzel Stouffer was entered into as a result of coercion, fraud, duress, undue influence and breach of fiduciary duty.  In her prayer for relief, Malkin asked the court to conduct a hearing as to the reasonableness of the total fees charged and costs incurred by Pretzel Stouffer.  She asked that she be awarded any moneys paid to Pretzel Stouffer for fees found to be excessive or unreasonable.
(footnote: 2)
B.  Section 2-1401 Hearing

The evidence at the section 2-1401 hearing showed that Malkin's lead counsel at Pretzel Stouffer was Gemma Allen.  Allen was assisted by Pretzel attorneys Ronald Ladden and William White.  In addition, Allen hired three outside attorneys:  Margorie O'Connell, a Washington D.C. tax attorney; Richard Devine; and Raymond Simon, a political lobbyist and Allen's brother-in-law.  Allen hired the accounting firm of Ostrow, Reisin, Berk & Abrams, Ltd. (ORBA)
(footnote: 3) to analyze and value the marital estate, primarily Judd Malkin's financial assets and interests.  She also hired Dennis Hegarty, her brother-in-law who was a certified public accountant.  Allen later hired Scott Schaffer of the accounting firm of Markowitz, Schaffer and Israel to replace Hegarty in formulating and reviewing financial discovery.  (Hegarty died during the early pendency of the case.)  During settlement negotiations in the dissolution action, Pretzel Stouffer negotiated reductions in the fees of some of these professionals.  The final fee total of $2,740,000 was allocated as follows:  Pretzel Stouffer - $1,541,000; ORBA - $760,000 (reduced from $1.19 million); O'Connell - $163,000 (reduced from $173,000); Simon - $25,000; Devine - $10,000; Schaffer - $188,000; Hegarty - $18,000; and Schiller, DuCanto & Fleck - $35,000 (reduced from $57,000) for legal services rendered prior to Malkin's retention of Pretzel Stouffer.
(footnote: 4)
1.  Testimony of Malkin

At the section 2-1401 hearing, Malkin testified regarding her close relationship with Allen that began when Allen undertook her representation in June 1990.  She testified that she "totally trusted and adored" Allen and that she had a "sister-like relationship" with Allen.  She introduced letters and notes sent by Allen to her which she testified solidified their friendship.  Malkin testified to their daily telephone calls to each other, the numerous charitable benefits they attended together, and the numerous vacations they took together, many at Malkin's expense.  Malkin gave Allen keys to her homes in Winnetka and Aspen.  According to Malkin, Allen was her "conduit for all information" regarding the dissolution proceeding.  Allen forwarded correspondence, pleadings, and briefs to Malkin but without explanation.  Malkin testified that she also received periodic billing statements from Pretzel Stouffer which contained narrative descriptions of the work it performed on Malkin's behalf.  Malkin stated that she merely glanced at these mailings and "filed them away" without reading them.  She stated that she never questioned Pretzel's bills, even though she found them difficult to understand, stating, "I trusted Gemma to oversee everything.  She had my proxy.  I trusted her."  She stated that at no time prior to the March 23, 1994 prove-up hearing in the dissolution proceeding was she aware that Pretzel Stouffer had questions regarding bills from ORBA, Marjorie O'Connell or Dick Devine.  She did not recall ever having received invoices or billings or work product from ORBA or Devine.

Malkin testified on cross-examination regarding her March 1994 knowledge of and satisfaction with the marital settlement agreement between Judd Malkin and herself.  She admitted that, prior to the prove-up hearing, she had reviewed the calculations and consulted with her professional advisors, including Allen, Ladden, White, Schaffer, and her adult children, two of whom were attorneys, and was convinced that the settlement agreement would be appropriate to accept.  She also admitted that sometime after March 19 but before March 23, 1994 she met with Allen and White at the offices of Pretzel Stouffer to review specific questions that would be asked of her at the prove-up hearing in the dissolution proceeding.  She stated that she was advised that she was entitled to a hearing with respect to the reasonableness and necessity of fees and costs incurred and that she was entitled to the benefit of independent counsel.  Malkin stated that during the prove-up hearing she indicated in answering questions put to her by Allen and/or Judd Malkin's attorney that she conferred on several occasions with Allen and other attorneys and professionals regarding the meaning and effect of the marital settlement agreement; that she was entering into the agreement freely, willingly and with full knowledge of its terms; that she had not been coerced into signing the agreement; that she was satisfied with the terms of the agreement; and that she was "very much" satisfied with the representation she received.  She testified at the section 2-1401 hearing that her answers to the prove-up questions regarding her waiver were the truth.  

The transcript of the prove-up hearing, which was introduced into evidence at the section 2-1401 hearing, showed that Malkin was asked the following questions by Allen and gave the following responses:

"Q: [Y]ou are aware that pursuant to the agreement, you are responsible for a portion of your fees and costs incurred in this matter after contribution by Judd which is set forth in the amounts and terms in detail in the Settlement Agreement?

 A: Yes.

 Q: And have I advised you that pursuant to Section 508 of the Illinois Marriage and Dissolution of Marriage Act, you would be entitled to a hearing with respect to the reasonableness and necessity of fees and costs incurred and you are entitled to the benefit of independent counsel in those proceedings?

 A: Yes, you have.

 Q: And at this juncture, you are not requesting a hearing on the fees incurred on your behalf and those issues have been settled; is that correct?

 A: That's correct."

[Nonpublishable material under Supreme Court Rule 23 omitted.]

C.  Trial Court's Ruling

While noting the existence of some evidence regarding billing improprieties by Pretzel Stouffer, the court also noted the financial complexity of the case, the "dogged and intricate resistance" of Judd Malkin during discovery, the difficulties in developing case strategies, and the preparation of an 111-page amended dissolution petition that was "time-consuming, clear cut, disciplined, imaginative, and successful as far as the case developed."  As to Pretzel Stouffer's fees, the court held as follows:

"The final question as to the Pretzel fee is whether there is significant evidence of the fee being unreasonable and therefore a ground for vacature [
sic
].  As to the portion of the fee involving Mr. White, there is such evidence."

However, while the court made certain unflattering characterizations of the evidence pertaining to White's conduct and personality, predicated upon the testimony of Ladden and Allen as discussed previously, the court made no specific finding with respect to the reasonableness of White's fees.

With respect to the fees of Devine and Simon, the court held that their failure to give Malkin detailed fee statements was sufficient to warrant vacatur.  The court also found that ORBA's bills were "open to serious question" based on evidence that those bills lacked detail, that ORBA charged Malkin for personnel training, that ORBA raised its rates without obtaining Malkin's consent and that ORBA's services were unreasonable and unnecessary.  The court found that to be true with respect to ORBA's original bill of $1,119,000 "but less true of the reduced amount of $760,000."  The court ordered further review of the reduced amount, however, because "[t]o hold however that it is not true at all as to the reduced amount would be to turn over the vacature [
sic
] decision to those who negotiated with ORBA to reduce the bill."  As to O'Connell's fee, the court found that there was no evidence that it was unreasonable.

   With respect to the relationship between Malkin and Allen, the court found that facts regarding that relationship were not of record at the time of the prove-up hearing.  The court further found, however, that Malkin did not sustain her burden of proving undue influence as a ground for vacatur of the Pretzel Stouffer fees or any other professional and consultant fees.  The court made no findings with respect to the section 2-1401 requirement of due diligence.

On the issue of Malkin's section 508 waiver, the court found Malkin's waiver ineffective with respect to the fees of Devine and Simon because those attorneys had not provided Malkin with billing statements.  It held the waiver to be ineffective as to the fees of ORBA and to the fees of William White of Pretzel Stouffer because of evidence of unreasonableness.  The court thereupon vacated Malkin's waiver and agreement as to the fees of Devine, Simon, ORBA and Pretzel Stouffer and ordered that a section 508 hearing be held with respect to those fees.

DISCUSSION OF ISSUES

A.  Pretzel Stouffer's Appeal

Section 2-1401 of the Code creates an exception to the general rule that a court cannot review its own judgment after the expiration of 30 days from the date of entry.  735 ILCS 2/1401 (West 1992).  A party seeking vacatur under section 2-1401 of the Code must show:  (1) the existence of a meritorious defense or claim, that is, facts that would have prevented the rendition of the original judgment if they had been of record when the judgment was entered; (2) due diligence in pursuing that claim or defense before judgment, that is, that the failure to discover and present those facts before the judgment was not the fault of the petitioner; and (3) diligence in pursuing the claim or defense after judgment.  
E.g.
, 
In re Marriage of Kantar
, 220 Ill. App. 3d 323, 581 N.E.2d 6 (1991); 
In re Marriage of Travlos
, 218 Ill. App. 3d 1030, 578 N.E.2d 1267 (1991); 
In re Marriage of Pitulla
, 141 Ill. App. 3d 956, 491 N.E.2d 90 (1986).  With respect to the element of diligence in pursuing the claim or defense prior judgment, it has been stated:

"[S]ection 2-1401 was never intended to give a litigant a new opportunity to do that which should have been done in an earlier proceeding.  The provision was never intended to relieve a litigant of the consequences of his mistake or negligence.  [Citation.]

***

*** Specifically, to set aside a judgment based on newly discovered evidence, it is quite settled that the evidence must be such as could not reasonably have been discovered at the time of or prior to the entry of the judgment.  [Citations.]"  
Travlos
, 218 Ill. App. 3d at 1035, 578 N.E.2d at 1271-72.

If the allegations of a section 2-1401 petition are factually challenged by the respondent, those allegations must be proved by the petitioner at a full and fair evidentiary hearing.  The petitioner has the burden of proving those allegations by a preponderance of the evidence.  
Smith v. Airoom, Inc.
, 114 Ill. 2d 209, 499 N.E.2d 1381 (1986).  The granting of a section 2-1401 petition is within the sound discretion of the trial court; and a court of review will disturb the trial court's ruling only if the trial court clearly abused its discretion.  
E.g.
, 
Klein v. La Salle National Bank
, 155 Ill. 2d 201, 613 N.E.2d 737 (1993); 
In re Marriage of Delk
, 281 Ill. App. 3d 303, 666 N.E.2d 683 (1996).

In the instant case, Pretzel Stouffer challenged the allegations of Malkin's section 2-1401 petition; and at the conclusion of the evidentiary hearing the court granted section 2-1401 relief.  On appeal, Pretzel Stouffer first argues that Malkin was not entitled to section 2-1401 relief because she did not establish a meritorious defense.  It contends that Malkin presented no facts that if known by the trial court at the time of entry of the judgment of dissolution of marriage would have prevented entry of the fee portion of that judgment.  Pretzel Stouffer argues that the evidence at the section 2-1401 hearing showed that Malkin agreed to the fee awards and waived her right to a fee hearing at the prove-up hearing.  As to the waiver, Pretzel Stouffer argues that the evidence showed that Malkin's waiver was given freely and intelligently and that Malkin had been advised of her right to a hearing on fees, that Malkin was competent to waive that right, and that Malkin made an informed decision to forego her right to obtain independent counsel on the issue of fees.  We agree.

A section 2-1401 petition can be the proper means by which to set aside a fee agreement between an attorney and client entered into during the attorney-client relationship when that agreement is the product of undue influence.  It is presumed that the attorney exercised undue influence where a transaction is entered into between an attorney and his client during the existence of that relationship and where the attorney benefits from the transaction.  
In re Marriage of Pagano
, 181 Ill. App. 3d 547, 558, 537 N.E.2d 398, 405 (1989) (
Pagano I
).  The burden of proof with respect to that presumption was explained in 
Pagano I
 as follows:

"Although the burden of persuasion is upon contestant [
sic
] (the client) to establish undue influence [citation], the burden is upon the attorney to come forward with clear and convincing evidence that such contract was fair, equitable, just, and did not come about from undue influence.  [Citations.]  It must also be shown that the client had a full understanding of the facts and their legal consequences.  [Citation.]  In the absence of clear and convincing evidence to rebut the presumption, the presumption of undue influence prevails.  [Citation.]  However, where clear and convincing proof is presented, the presumption vanishes [citation], and it is then for the trier of fact to determine whether there actually was undue influence [citation].  
Pagano
, 181 Ill. App. 3d at 558, 537 N.E.2d at 405.

Accord 
In re Marriage of Pagano
, 154 Ill. 2d 174, 607 N.E.2d 1242 (1992) (
Pagano II
); 
Klaskin v. Klepak
, 126 Ill. 2d 376, 534 N.E.2d 971 (1989); 
Franciscan Sisters Health Care Corp. v. Dean
, 95 Ill. 2d 452, 448 N.E.2d 872 (1983).

In 
Pagano I
, the court reversed the dismissal of a section 2-1401 petition seeking vacatur of two agreed orders awarding attorney fees based in part upon a finding that the petition alleged sufficient facts to support the presumption of undue influence.  The trial court had dismissed the petition finding that it failed to allege due diligence.  On review, the appellate court took all well-pleaded facts in the petition as true and found that the petition alleged sufficient facts of due diligence.  It also found that the petitioner had a meritorious defense based upon allegations that supported the presumption of undue influence.  (The petition alleged, among other things, that the petitioner signed orders on the eve of trial agreeing to pay attorney fees under threat that her attorneys would not continue to represent her.)  Based only upon the allegations in the petition, the court found that the section 2-1401 petition should have been granted and remanded the matter for a hearing on attorney fees pursuant to section 508 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1987, ch. 40, par. 508).  (At the evidentiary hearing held after vacatur and remand, the trial court found that the attorney had not engaged in undue influence and had not breached his fiduciary duty.  The court also reduced the fees sought by the attorney.  The finding of lack of undue influence and breach of fiduciary duty was affirmed on appeal.  
Pagano
, 154 Ill. 2d 174, 607 N.E.2d 1242.)

In the instant case, Malkin's petition alleged the existence of two meritorious defenses, that her agreement to pay the fees was the result of undue influence and that the fees she agreed to pay were excessive.  Pretzel Stouffer disputed Malkin's allegations, and the trial court conducted a section 2-1401 evidentiary hearing.  Based upon the testimony put forth at that hearing, the trial court concluded that Pretzel Stouffer did not exert undue influence upon Malkin when it obtained her agreement to pay the fees she is now contesting.  The trial court found that before Malkin agreed to the payment of those fees she had been aware of the fees as they were incurred; that the fees resulted from the rendering of substantial services to Malkin that greatly benefitted her; that Malkin had received an explanation of her section 508 rights on more than one occasion; that Malkin was an intelligent, capable adult who generally managed her own affairs and who operated a business in the art field; and that Malkin approved the overall marital settlement agreement and the fees provision therein on several occasions during the negotiation process.  The court also found that Malkin testified at the section 2-1401 hearing that the answers she gave at the prove-up hearing regarding her section 508 waiver were truthful.  The court weighed the evidence and assessed the credibility of the witnesses; and we must treat its finding of lack of undue influence with deference.  The trial court was in the best position to make that determination; and we cannot say that the trial court's finding in this regard was an abuse of discretion.  See 
Pagano
, 154 Ill. 2d at 187, 607 N.E.2d at 1248.  In affirming the trial court's finding of lack of undue influence, we cannot invoke the friendship between an attorney and client, even where feigned or exaggerated, as a substitute for coercion or undue influence.  While a certain degree of professional distance between an attorney and client is desired, we cannot agree that the impropriety of even a feigned and exaggerated friendship compels a finding of undue influence as a matter of law in the face of an expressed finding to the contrary by the trial court.

 Malkin argues that even if she failed to prove undue influence she is entitled to section 2-1401 relief because she established that the fee portion of the judgment was excessive.  Initially, we disagree with Malkin's contention that she established excessive fees.  As will be discussed in greater detail below, all that can be gleaned from the trial court's order relative to the section 2-1401 proceedings is that the evidence presented by Malkin created a question as to the reasonableness of the fees of ORBA and William White of Pretzel Stouffer.  With respect to the fees of Devine and Simon, the court expressed no finding as to reasonableness.  Rather, it vacated the portion of the judgment relative to their fees based solely on the fact that they had not submitted billing statements to Malkin.

Malkin cites 
Pagano I
 and 
In re Marriage of Kantar
, 220 Ill. App. 3d 323, 581 N.E.2d 6 (1991) wherein allegations of excessive fees and/or billing irregularities supported the grant of section 2-1401 relief.  We find the facts in 
Kantar
 and 
Pagano I
 to be sufficiently distinguishable from the facts in the instant case so as to require a different result.  In 
Kantar
, the section 2-

1401 petitioner sought to vacate a judgment incorporating her agreement to pay attorney fees and to vitiate her waiver of the section 508 hearing based upon allegations concerning various acts of attorney misconduct in the procurement of her agreement and waiver.  The trial court granted summary judgment to the attorney on the basis of lack of due diligence.  The appellate court reversed.  While alleged excessive billing served as a basis for section 2-1401 relief in 
Kantar
, it did not purport to be the sole and independent basis for that relief.  Other allegations considered by the court and/or set forth in the petition included fraudulent billing entries, the lack of a meaningful examination of the attorneys' fee statement by the client before agreement and waiver; the failure of the attorneys to respond to the client's request to discuss the accuracy and legitimacy of their fee request; and the obtaining of the client's agreement and waiver by coercion, undue influence, misrepresentation and intimidation and while the client was under extreme duress as a result of her sexual relationship with one of her attorneys.

Similarly, as in 
Kantar
, section 2-1401 relief was granted in 
Pagano I
 based upon the petitioner's allegations that her agreement to pay attorney fees resulted from undue influence by her attorney and that the fees charged were excessive.  (As noted above, since the appeal in 
Pagano I
 was taken from dismissal of the petition on a pleading motion, the court was required to take as true all well-pleaded facts including allegations to support the presumption of undue influence.)  While there is some language in 
Pagano I
 suggesting that section 2-1401 relief would have been granted even if the only attorney misconduct alleged to have occurred was the ethical misconduct of charging excessive fees (see 107 Ill. 2d R. 2-106 now at 134 Ill. 2d R. 1.5), in any event such a result would not extend or control the facts and circumstances presented here.  In 
Pagano I
, the excessiveness of the attorney fees was patently evident from the face of the section 2-1401 petition.  That pleading alleged that the petitioner agreed to the entry of two orders which provided for the combined payment of $50,000 for attorney fees while the attorney's own petition for fees, filed subsequent to the entry of those orders, showed fees for services rendered totalling only $37,034.15.  There could be no dispute that the agreed orders allowed for fees in excess of those earned, and no evidentiary hearing was necessary to establish the meritorious defense of excessive fees.  Under such circumstances the court in 
Pagano I
, in a super-added discussion, suggested that, as a matter of public policy, a waiver of a section 508 hearing should not be effective to condone what is in fact a breach of ethics by the attorney in attempting to recover excessive fees.  
Pagano
, 181 Ill. App. 3d at 562, 537 N.E.2d at 407-08 (stating, "as a matter of public policy, an attorney should not be able to retain a fee that is excessive").  We see merit in the ethical concern reflected in 
Pagano I
.  It would be troubling for a court to be compelled to aid an attorney in his or her effort to recover fees which were patently in breach of an attorney's ethical duties, notwithstanding an earlier waiver of a fee hearing by the client.

However, when the client has waived the right to a section 508 hearing, that client's ability to seek vacatur of a judgment for fees would be far more tenuous when the allegation of excessive fees is not patently apparent and when there is nothing more than a request for an investigatory hearing on that question, a hearing which was already waived.  Under such circumstances, a second opportunity for a hearing should not become available unless the waiver of the first hearing was obtained through undue influence, fraud, or other manipulative conduct in breach of the attorney's fiduciary duties.  This position is consistent with our supreme court's position in 
Pagano II
 wherein the court held that a party can agree to the payment of fees and waive his or her right to a section 508 hearing.  See 
Pagano
, 154 Ill. 2d at 184, 607 N.E.2d at 1247 (declining to hold that the fee hearing provision of section 508 may never be waived and looking to the attorney's exertion of undue influence upon the client or other breach of fiduciary duties).  It also is consistent with the court's acknowledgement in 
Pagano I
 that "a client may waive her right to a hearing under section 508."  
Pagano
, 181 Ill. App. 3d at 561, 537 N.E.2d at 407.

Whereas in 
Pagano I
 the section 2-1401 petition on its face conclusively established that the fees were excessive, in the instant case the excessiveness of the fees could not be established without an evidentiary hearing on that issue.  Thus, even if we were to construe the holding in 
Pagano I
 to vitiate a hearing waiver on the ground of excessive fees independent of the presence of undue influence, which as discussed above was presumed to be present in 
Pagano I
, it would not impact upon the facts in this case.  To allow Malkin or any other petitioner the opportunity to present evidence of reasonableness during section 2-1401 proceedings would in effect vitiate all section 508 waivers, no matter how obtained, and make all judgments for fees obtained without section 508 hearings nonfinal and subject to post-judgment hearing.  As noted, such a result would be inconsistent with 
Pagano II
 (see 
Pagano
, 154 Ill. 2d at 184, 607 N.E.2d at 1247 (declining to hold that fee hearing provision of section 508 may never be waived)) and 
Pagano I
 as well (see 
Pagano
, 181 Ill. App. 3d at 561-62, 537 N.E.2d at 407 ("a client may waive her right to a hearing under section 508")).

It makes little sense to say that the court in a section 2-

1401 proceeding can or should allow inquiry and testimony to ascertain whether a mere, conclusory allegation of excessive fee can be proven after the client has knowingly and deliberately waived the opportunity provided by section 508 to reach that issue before judgment and where the client has not shown that the waiver of the section 508 hearing was obtained by fraud, undue influence, coercion, or other breach of fiduciary duties by the attorney.  See 
Pagano
, 181 Ill. App. 3d at 559, 537 N.E.2d at 405 citing 
Thompson v. Thompson
, 91 Ill. App. 3d 943, 945, 415 N.E.2d 28 (1980) (section 2-1401 petitions are the proper means for setting aside consent judgments obtained by fraud or coercion).  When the client has not alleged facts showing that the agreement to pay fees and the corresponding waiver of the right to a hearing on those fees was the result of fraud, coercion, undue influence or other breach of fiduciary duties, and when the client has not alleged facts wherein the excessive fee is patently apparent, the client should not be able to utilize a section 2-1401 hearing as a fishing expedition to explore the possibility of excessive fees.  To allow such an inquiry would create an anomaly in that the court would be providing the relief to which the section 2-1401 petitioner would be entitled if he or she prevailed in the section 2-1401 proceeding.  The court, in effect, would be proceeding to a section 508 hearing to determine whether the fees were reasonable as a prerequisite to determining whether the petitioner is entitled to section 2-1401 relief which would only then entitle him to a section 508 hearing.

In the instant case, it is clear that the claim of excessive fees was not patent from the face of the section 2-1401 petition as that petition consisted of the mere conclusory allegation of excessive fees.  Consequently, there should be no right to any hearing on that issue if the pre-judgment waiver of the section 508 hearing was free of fraud, intimidation, coercion, undue influence or other breach of the attorneys' fiduciary duties.  See 
Pagano
, 154 Ill. 2d 174, 607 N.E.2d 1242 (attorney overcame the presumption of undue influence with evidence that the client understood the agreed orders for fees that she signed, understood that she was ultimately responsible for payment of the fees in the absence of a court order directing her former husband to pay, was not in need of independent advice, and had extensively reviewed her file and the time sheets contained therein).  Here, as discussed above, the evidence at the section 2-1401 hearing showed that there was no undue influence or other breach of fiduciary duties by Malkin's attorneys.  The evidence also showed that the petitioner deliberately and knowingly waived her right to a section 508 hearing
.  The evidence in that regard indicated that at the time she waived her right to a section 508 hearing Malkin was aware of the fees incurred on her behalf by Pretzel Stouffer as well as by the other professionals retained by Pretzel Stouffer on her behalf.  Malkin testified that she approved the overall marital settlement agreement and the fees provision included therein on several occasions during the negotiation process after eliciting the advice of her counsel, her accountants and her adult children.  Malkin testified that she routinely had been given periodic statements from Pretzel Stouffer and that Pretzel Stouffer sent her statements from ORBA.  Malkin never questioned the contents of those bills.  The evidence also showed that in late January or February 1994, approximately one month prior to the prove-up, Malkin received a 177-page bill from Pretzel Stouffer, containing 1165 entries, covering a five-month period, and totalling approximately $400,000 and that she received a final 34-page statement on March 14, 1994, nine days before the prove-up, containing 185 entries for work performed as far back as 1991 and totalling approximately $32,000.  Again there was no testimony by Malkin or any other witness that Malkin questioned those bills, sought explanation or reduction or requested additional time to review their contents.

The evidence also showed that, prior to the prove-up and the giving of her section 508 waiver, Malkin received explanations of her section 508 rights on more than one occasion; she was advised that she was entitled to a hearing with respect to the reasonableness and necessity of fees and costs incurred; and she understood she was entitled to the benefit of independent counsel.  The record shows that Malkin testified at the prove-up hearing as to her knowledge of her obligation to pay a portion of her fees and costs as well as to her knowledge of her section 508 rights and indicated that she chose not to exercise those rights.  At the section 2-1401 hearing, Malkin stated that her testimony at the prove-up was truthful.  Finally, as the trial court found, Malkin was an intelligent, capable adult who generally managed her own affairs and who operated a business in the art field.
(footnote: 5)
The fact that Malkin's waiver was freely and deliberately given and with knowledge of her rights and obligations distinguishes this case from the cases cited by Malkin.  In 
In re Marriage of Pitulla
, 141 Ill. App. 3d 956, 491 N.E.2d 90 (1986), the petitioner approved the revised settlement agreement which included a provision for the payment of her attorney's fees.  At the time she signed the agreement, the petitioner had not been given an itemized bill from her attorney, despite her request for one, and allegedly had been advised by her attorney that the judgment for dissolution of marriage would not be entered until she paid his fees.  After payment of the fees and entry of judgment, the petitioner filed a section 2-1401 petition.  The court granted section 2-1401 relief finding the petitioner had not waived her right to a hearing on fees by signing the marital settlement agreement and failing to object to the fees or request a section 508 hearing.  Unlike in the instant case, there was no evidence that the petitioner had knowledge of her right to a hearing on fees so as to make her waiver a knowing one.  It does not appear from the decision in that case that the petitioner was questioned at a prove-up hearing regarding her knowledge of her rights or her desire to waive a section 508 hearing.  Also, unlike in the instant case, the petitioner had not been provided with an itemized statement from her attorney regarding his fees, despite her request for one, and there was evidence that petitioner's agreement to pay the fees was coerced by her attorney's statement that the judgment for dissolution of marriage would not be entered unless she paid his fees in full.  See also 
In re Marriage of Bennett
, 131 Ill. App. 3d 1050, 476 N.E.2d 1297 (1985) (in section 2-1401 proceedings, court found no waiver of hearing where petitioner had not been advised prior to hearing of attorney's intention to seek entry of order of fees and where petitioner was promised a statement of account but was not given that statement).

In 
Kantar
, 220 Ill. App. 3d 323, 581 N.E.2d 6, also cited by Malkin, the petitioner expressly waived her right to a section 508 hearing at a prove-up hearing.  At that hearing the petitioner indicated her understanding of her obligation to pay the fees of her attorney, her knowledge as to the amount of those fees, her prior receipt and review of an itemized statement regarding those fees, her understanding of her right to a hearing on those fees, and her belief that the fees were reasonable.  However, the facts elicited during summary judgment proceedings on petitioner's section 2-1401 petition also showed that the petitioner's expressed waiver was obtained as a result of egregiously manipulative conduct by her attorneys.  The petitioner alleged that her agreement to pay the fees of her attorney (and, presumably, her waiver) were procured by undue influence, coercion, misrepresentation and intimidation by her attorneys.  The petitioner alleged, among other things, that her attorneys threatened to withdraw if she did not acquiesce and sign the settlement agreement, that she was told she could not get divorced unless she agreed to pay the fees of her attorneys, that the billing statement was handed to her ten minutes prior to the prove-up hearing, and that she requested but was denied a discussion with her attorneys regarding the accuracy and legitimacy of the fee request.  Finally, and most egregious, the petitioner alleged that she had been seduced by one of her attorneys, that she had engaged in sexual relations with that attorney on 20 occasions and that, as a result of that relationship, she was under extreme duress at the time of the prove-up hearing.  Clearly, these facts showed that the petitioner's waiver in 
Kantar
, while expressly given in open court, was vitiated because it was obtained under duress, undue influence, and coercion.

Our interpretation of 
Pagano I
, 
Pagano II
, 
Pitulla
 and 
Kantar
 leads us to conclude that a section 2-1401 petitioner should not be allowed to negate the effect of a waiver of a section 508 hearing based upon the mere allegation of an excessive fee.  Rather, the contention of excessive fees must be accompanied by allegation and proof that the pre-judgment agreement to pay those fees and the co-existent waiver of a section 508 hearing on reasonableness of those fees resulted from improper conduct by the petitioner's attorney.  Conduct, such as fraud, undue influence or coercion, would defeat the waiver by showing that the waiver was not obtained voluntarily or with knowledge and understanding of the obligations and rights involved.  Absent such conduct, the waiver will prevent vacatur of the fee judgment and remandment for a section 508 hearing unless the section 2-1401 allegation of excessive fees is evident from the section 2-1401 pleadings and submissions and without the holding of an evidentiary hearing on that issue.  Here, as discussed above, Malkin did not establish that her agreement regarding the payment of fees or her waiver of a section 508 hearing on the reasonableness of those fees were the result of undue influence, fraud, coercion, intimidation or any other breach of fiduciary duties.  Moreover, Malkin's allegation of excessive fees did not overcome her waiver because that allegation was bare, conclusory and unsupported absent the holding of an evidentiary hearing on reasonableness.
(footnote: 6)
As an additional reason why the trial court erred in granting section 2-1401 relief, Pretzel Stouffer argues that Malkin did not establish pre-judgment due diligence in that she did not prove that her failure to discover or present facts regarding the excessiveness of the fees before entry of judgment was not her fault.  See 
Kantar
, 220 Ill. App. 3d 323, 581 N.E.2d 6; 
Travlos
, 218 Ill. App. 3d 1030, 578 N.E.2d 1267; 
Pitulla
, 141 Ill. App. 3d 956, 491 N.E.2d 90.  (Pretzel Stouffer makes no argument regarding Malkin's post-judgment due diligence as it conceded in its answer to Malkin's section 2-1401 petition that Malkin was diligent in filing her petition one year after the judgment was entered.)  In view of our holding that Malkin failed to establish a meritorious defense, we need not reach the issue of diligence.  However, even if Malkin had established a meritorious defense to the fee judgment, we would agree that Malkin did not establish pre-judgment due diligence.
(footnote: 7)
Malkin argues, in reliance on 
Pagano I
, that she was not required to establish due diligence.  We disagree.  
Pagano I
 did relax the due diligence requirement when a section 2-1401 petition alleges attorney impropriety.  
Pagano
, 181 Ill. App. 3d at 557, 537 N.E.2d at 404, citing 
Franciscan Sisters Health Care Corp. v. Dean
, 95 Ill. 2d 452, 448 N.E.2d 872 (1983).  As stated in 
Pagano I
, a section 2-1401 petition is addressed to the equitable powers of the court; and the requirement of due diligence can be relaxed where justice and good conscience require it (
Pagano
, 181 Ill. App. 3d at 556, 537 N.E.2d at 403, citing 
Smith v. Airoom, Inc.
, 114 Ill. 2d 209, 499 N.E.2d 1381) or "'where it is clear from all the circumstances that a party has procured an unconscionable advantage through extraordinary use of a court process'" (
Pagano
, 181 Ill. App. 3d at 556, 537 N.E.2d at 403, quoting 
Hiram Walker Distributing Co. v. Williams
, 99 Ill. App. 3d 878, 881, 426 N.E.2d 8, 10 (1981).  In 
Pagano I
, although post-judgment due diligence was found to exist, the court nevertheless stated in 
dictum
 that there were sufficient allegations of attorney impropriety to excuse any lack of diligence.  
Pagano
, 181 Ill. App. 3d at 557, 537 N.E.2d at 404.  Those allegations, which were taken as true on review of the dismissal order, included coercion by the attorney in threatening withdrawal if the petitioner did not sign the agreed order for fees as well as the failure of the attorney to provide the petitioner with itemized statements, the lack of a retainer agreement, and the lack of disclosure of the attorney's hourly rates.  In addition, the court relied upon the presumption of undue influence.

We find insufficient circumstances to warrant the relaxation of the due diligence requirement here.  As discussed above, the presumption of undue influence was rebutted to the satisfaction of the trial judge at the section 2-1401 hearing.  Furthermore, the evidence at the section 2-1401 hearing showed that Malkin had ample time, opportunity and resources to question the fees she was charged.  Malkin testified that she received copies of bills from Pretzel Stouffer but that she filed them away and did not review them.  Malkin did not question Pretzel Stouffer's bills relating to its fees or ORBA's fees despite having received a communication from Judd Malkin's expert, six months before the prove-up, questioning those fees.  In the months of negotiations immediately prior to consummation of the marital settlement agreement, Malkin received copies of statements showing the fees for all of the professionals that had rendered services on her behalf.  She reviewed the calculations in the marital settlement agreement and consulted with her professional advisors, including Allen, Ladden, White, Schaffer, and her adult children prior to the prove-up but did not question the fee computations or seek further explanation.  In late January or February 1994, approximately one month prior to the prove-up, Malkin received a 177-page bill from Pretzel Stouffer; and on March 14, 1994, nine days before the prove-up, she received a 34-page final statement.  She again did not raise any questions or objections to these statements.

There can be no question that the fee issues raised in Malkin's section 2-1401 petition and at the hearing on that petition existed prior to entry of the dissolution of marriage judgment and could have been raised by her prior to that time had she sought to do so.  She chose instead to sign the marital settlement agreement that called for the payment of the fees enumerated therein.  She also chose at the prove-up hearing to acknowledge and assent to those fees.  She declined the opportunity to have the court review the reasonableness and necessity of the fees or to have independent counsel represent her on that issue.  Thus, we cannot say that the facts presented here warrant a relaxation of the due diligence requirement of section 2-1401.  See 
In re Marriage of Broday
, 256 Ill. App. 3d 699, 703, 628 N.E.2d 790, 795 (1993) (a party cannot be "relieved of the consequences of her own lack of diligence in failing to discover *** information relevant to the divorce proceeding"); 
Travlos
, 218 Ill. App. 3d 1030, 578 N.E.2d 1267 (1991) (finding lack of due diligence where party did not avail himself of information available to him); 
In re Marriage of Halas
, 173 Ill. App. 3d 218, 223, 527 N.E.2d 474, 478 (1988) ("[c]onsistent with strong judicial policy favoring final judgments *** a section 2-

1401 petition is not to be used as a device to *** put into issue matters which have previously been or could have been adjudicated").

As its final argument on appeal, Pretzel Stouffer argues that there was no evidence showing that its fees were in fact unreasonable.  In view of our holding that the fee awards should not have been vacated, we need not reach this issue.  However, even if we were to reach it, the court made no dispositive finding that Pretzel Stouffer's fees were in fact unreasonable.  As discussed above, the court's order shows that, at best, it found there to be a question regarding White's fees.  In that regard the court stated:

"The final question as to the Pretzel fee is whether there is significant evidence of the fee being unreasonable and therefore a ground for vacature [
sic
].  As to the portion of the fee involving Mr. White, there is such evidence."

But, as set forth in the "Background Facts" section of this opinion, the court based that finding on testimony by Pretzel attorneys, Allen and Ladden, which, while personally unflattering, did not specifically refer to White's billing practices or the reasonableness of his charges.  It would appear that the court intended that the actual determination of unreasonableness of White's fees be made at the section 508 hearing to be held on remand.
(footnote: 8)
B.  Malkin's Cross-Appeal

In her cross-appeal, Malkin argues that the trial court erred in failing to vacate the fee award of $163,000 to Marjorie O'Connell, the divorce tax specialist, hired by Pretzel Stouffer on Malkin's behalf.  Malkin contends that O'Connell's services were unnecessary and that her fees were unreasonable.  In view of our holding that Malkin did not establish the necessary elements for a section 2-1401 vacatur of the fee award, we need not discuss this issue further.

For the foregoing reasons, the order of the Circuit Court of Cook County vacating the portion of judgment for dissolution of marriage entered on March 23, 1994 is reversed.

Reversed.

CAHILL AND LEAVITT, JJ., concur.

FOOTNOTES
1:     
Wherever it appears in this opinion, the name "Malkin" will refer to Jeanne Malkin.  Judd Malkin will be referred to by use of his full name.

2:     
Judd Malkin filed an application to intervene in the section 2-1401 proceedings (see 735 ILCS 5/2-408 (West 1994)), alleging that he paid approximately 90% of Jeanne Malkin's fees and contending that he should share in any recovery she obtained.  The trial court entered the application but continued the matter until resolution of the section 2-1401 proceeding.

3:     
We note that the only respondent to Malkin's section 2-1401 petition was Pretzel Stouffer.  None of the other professionals who were awarded fees pursuant to the marital settlement agreement incorporated into the dissolution of marriage judgment were named as parties to the section 2-1401 action.  A year after filing her petition, Malkin filed a motion to join Ostrow, Reisin, Berk & Abrams, Ltd. (ORBA) as a necessary party under section 2-405 of the Code of Civil Procedure (735 ILCS 5/2-405 (West 1994)).  Malkin argued that her petition to vacate also sought vacatur of the fees and costs awarded to ORBA.  That motion was denied as being premature.

4:     
In order to comply with appellate court opinion page limitations specified by amended Supreme Court Rule 23 (155 Ill. 2d R. 23) and Supreme Court Administrative Order MR No. 10343, we must delete the section of the "Background Facts" dealing with the evidence at the section 2-1401 hearing regarding the billing practices of Pretzel Stouffer and the other professionals retained by Pretzel Stouffer on Malkin's behalf.  We believe the elimination of these facts, on balance, is the least disruptive to the integrity and understanding of this opinion.  For a full and detailed discussion of the facts relevant to the instant appeal, see the full opinion, including the nonpublishable Rule 23 material, in 
Malkin v. Malkin
, Docket No. 1-96-3893.

5:     
Malkin argues that when she waived her right to a fee hearing she did so in response to a question as to whether she was waiving those rights "at this juncture" only.  She contends in her brief that she did not waive her right to a "final fee hearing."  We disagree with Malkin's overly narrow interpretation of her waiver.  Malkin's waiver was given at the prove-up hearing following Malkin's execution of the marital settlement agreement.  The purpose of the prove-up hearing was to bring finality to the dissolution proceedings and to allow for the entry of a judgment for dissolution of marriage.  It would be nonsensical to think that Malkin believed that the matter of fees, which was included in the marital settlement agreement, would somehow be left open for later review.

6:     
While not raised by the parties to this appeal, we note that the trial court vacated the portion of the judgment awarding fees to attorneys Devine and Simon solely for the reason that those attorneys had failed to provide detailed statements of their services.  That reason is not a proper basis for granting section 2-1401 relief.  See 
Pagano
, 181 Ill. App. 3d at 555, 537 N.E.2d at 403 ("the lack of a petition for attorney fees was procedural and, standing alone, not a basis for granting a section 2-1401 petition").

7:     
As discussed above, the trial court made no finding in its lengthy order regarding the diligence element to Malkin's section 2-1401 petition.

8:     
The court made similar generalized findings with respect to ORBA's bills.  In that regard, the court noted that evidence had been presented as to the unnecessary and unreasonable services provided by ORBA.  It found that the contention of unreasonableness was "clearly true of the initial ORBA statement of $1,119,000," stating further that it was "less true of the reduced amount of $760,000" that had been negotiated by Pretzel Stouffer.  The court nevertheless ordered that a hearing be held on the reasonableness of the $760,000 fee, finding that to hold otherwise "would be to turn over the vacature [
sic
] decision to those who negotiated with ORBA to reduce the bill."